# Rufus W. Skeels v. Thomas Starrett.

*Trespass by cutting timber—Treble damages.*

1. Written contracts defining the rights of the parties thereto cannot be varied, modified or contradicted by any contemporaneous oral agreement on the same subject.

2. One who is shown to have made a scale of logs can use it to aid his memory in testifying, in an action of trespass for removing them, as to the [quantity taken away; and if the correctness of the scale has been sworn to, it is admissible as original evidence.

3. Denial of the right of cross-examination is not ground of error where it is opposite counsel, and not the judge, who denies it, and no exception is taken.

4. Damages in the statutory action for cutting and taking away timber include the injury done to the freehold thereby; and where the declaration alleges injury to the timber remaining on the land it is proper to ask how its value would be affected by such removal.

5. A workman in a saw-mill, if familiar with the prices of lumber at the mill, is a competent witness as to the value of particular lumber cut in the neighborhood and taken there for manufacture.

6. Damages for the cutting and removal of timber may be measured by the value of the stumpage or timber when standing, and this may be reached by deducting from its value when manufactured the cost of cutting and removing it for manufacture.

7. Defendant in an action for cutting and removing timber may be cross-examined as to whether he had ever made an offer to plaintiff for the timber on the particular tract from which it was taken, as the answer might bear on the value of the timber before it was cut.

8. Where in a statutory action of trespass for cutting and removing timber, the only error was the admission of an oral agreement inconsistent with a written one but bearing on the good faith of the trespasser, the judgment against defendant was reversed only so far as to set aside the award of treble damages.

Error to Muskegon.   (Russell, J.)   May 13–14.—June 17.

Trespass.   Defendant brings error.   Judgment modified.

*Cook, DeLong & Fellows* for appellant.

*Smith, Nims, Hoyt & Erwin* for appellee.

CHAMPLIN, J. This action was brought to recover damages claimed to have been sustained by the plaintiff in consequence of certain trespasses committed by the defendant on lands belonging to plaintiff, in the county of Muskegon, on and subsequent to May 1, 1882. The declaration contained two counts. One was the ordinary count in trespass, and the other a count under the statute, and upon which the plaintiff recovered.

The plaintiff's evidence tended to show that he was the owner of the land in question; that the defendant entered upon the lands, and in 1882 cut down trees, converted them into saw-logs, and took from the lands logs to the amount of 33,712 feet, and in 1883, 33,549 feet; that he also cut and left on the ground logs to the amount of 29,840 feet. The evidence also tended to show that to obtain these logs the best timber was selected from some fourteen or sixteen acres of land, the stumpage value of which was variously estimated at from four and a half to fifteen dollars per thousand. The defendant denied the trespass of 1882; admitted that he cut timber on the plaintiff's lands in 1883, but says " he had a legal right to do so because the timber belonged to him by virtue of a written contract of sale executed by plaintiff to him, August 22, 1882."

On the 8th day of May, 1882, the plaintiff made a written contract with Smith & Field, by which he agreed to sell, cut and deliver afloat in White river, during the winter of 1882–83, all the merchantable pine timber then standing on certain lands, including the lands in question, providing there should be a sufficient amount of snow. In August following, the parties, Skeels and Starrett, made a contract, which the plaintiff claims was verbal, and by which he sold to defendant all the refuse pine timber on the land mentioned in the Smith & Field contract, after it had been stripped according to that contract, and with the distinct understanding that whatever the Smith & Field contract called for, Starrett was not to have, whether Smith & Field took it or not. The defendant claims the contract was in writing, and that by its terms he became the owner of all the pine tim-

ber on the lands after Skeels had ceased to deliver logs under the Smith & Field contract.

It appears that Skeels delivered to Smith & Field, under his contract with them, all the pine from one lot of eighty acres; but that, on account of there being too much snow, he only cut from about forty acres of the particular lot in question, leaving in the spring of 1883 some forty acres uncut, and which was estimated to contain from 700,000 to 1,000,000 feet of merchantable pine timber. The jury assessed the plaintiff's damages at $672.91, and found specially that the trespass for which they assessed damages was voluntary and without the leave of the plaintiff. Whereupon the court trebled the damages, and entered judgment in favor of the plaintiff and against the defendant in the sum of $2017.83.

The written contract entered into between the parties must control their rights; and all evidence of contemporaneous oral agreement upon the same subject-matter, varying, modifying or contradicting the written agreement, was inadmissible. The defendant relied upon this written agreement as (1) conveying to him the timber in question; and (2) if he was mistaken in his construction of the agreement, as evidence tending to prove that the trespass was committed under a claim of ownership, and as bearing upon the question whether the damages could lawfully be trebled by the court. We do not think the written agreement conveyed to defendant the timber in question, under the facts disclosed in the record; and as the only significance it can otherwise have is its bearing upon the action of the court in trebling the damages found by the jury, we do not think, in the disposition we shall make of that question, a new trial should be ordered on account of the error in admitting the testimony of the oral agreement.

The first and second assignments of error were based upon objections made to questions asked the witness Joseph Stevens. The witness had testified that he saw defendant on the land taking off the pine; that he had been upon the land since to ascertain how many trees had been cut; had made a scale of what was on the ground in 1882, and what

was taken off in 1883, and on the ground. The plaintiff's counsel then said, " I may as well offer, then, these as the scale he made of the logs." Defendant's counsel inquired, " What logs?" Plaintiff's counsel replied, " The scale of what was taken off in 1882 and 1883, and what remained: I put them in as evidence." *Defendant's Counsel.* " I object as incompetent. It don't prove any logs were cut." Plaintiff's counsel did not read them in evidence. He then asked the witness : " Tell us the amount you found was taken off then, in the summer of 1882." *Defendant's Counsel.* " I object ; he has not laid any foundation, having given the witness a paper to refresh his recollection with." *The Court.* " Did you make that paper ?" *Witness.* " I made it myself." *The Court.* " I overrule the objection." The defendant's counsel excepted. The witness began answering, when counsel for defendant again objected " that it is incompetent, under the ruling so far, or the question put to the witness, for him to undertake to read that paper." The court overruled the objection and the defendant excepted. The ruling was correct. The question called for the fact as to the scale of the logs. The scale was made by the witness, and he could use the scale to aid his memory. Indeed, by proving the correctness of the scale, it would be admissible as original evidence.

Counsel for defendant claims that, before the witness testified respecting the scale of the logs, he had a right to cross-examine him thereon, and that he was denied that right. The record discloses that it was the counsel for plaintiff who denied him that right, and not the court, and no exception was taken thereto.

Charles Serfling, another witness for plaintiff, testified as to his experience in scaling logs, and as to his having made a measurement and scale of the logs taken off of the land in question by the defendant, and of the manner in which they had been taken therefrom. He was asked ; " How would the value of the timber be affected that was left, by these 149 trees being taken out, cut, and taken away ?" Objection was made by defendant's counsel on the ground that there

was nothing in the declaration that counts on anything of that kind. The court inquired of plaintiff's counsel if the only object was to show the increase or decrease in the value of the freehold; and, on being answered in the affirmative, overruled the objection. In *Achey v. Hull* 7 Mich. 423, it was said that "The statute in question is not framed to protect possessory rights, but was made to give to the owners of the fee a right to sue, in the form of trespass, for the enumerated injuries to their inheritance. If the tenant in possession, whether owner or not, seeks damages for the disturbance of rights merely possessory, he is still left to his common-law action. But here the damages which are allowed to be trebled, are not damages to the temporary possession, but to the freehold." And it was also said that "the statute fairly construed would include, not merely the value of the timber or wood cut, but such damages as accrued to the freehold by their destruction. When the action is merely for carrying away timber already cut, the damages could not go well beyond its value; but when standing trees are cut down, the rule of damages should fairly be the amount of which the value of the estate is diminished by their destruction."

The question objected to, as well as similar questions put to this and other witnesses, is clearly within the rule above laid down, and was unexceptionable. The declaration not only alleged the cutting and carrying away of timber, but also injury to the timber remaining on the land, and was a sufficient allegation of injury to the freehold or inheritance to permit proof of damage to such freehold. In this respect the declaration followed the approved form found in Humphrey's Precedents, framed under a statute of which ours is a substantial copy.

The witness Proctor was interrogated relative to the value of certain lumber which the evidence tended to show had been cut upon plaintiff's land and taken to the mill where witness worked, and there sawed into lumber. He knew nothing of the value of lumber, except what they charged for it at the mill, which was in the vicinity of the plaintiff's land. An objection was interposed as to the competency of

the witness to testify as to the value of lumber at the mill. We think he was competent. His knowledge of the price charged for lumber at the mill would enable him to state the value of this lumber. The court, when instructing the jury, told them that, in regard to this and other testimony of value of lumber at the mill, they should only take it into account, if they found a trespass had been committed, in determining the damages which the plaintiff had sustained by reason of the cutting of the timber, and for that only.

And this leads us to the consideration of the errors alleged upon the evidence admitted to prove the plaintiff's damage. The plaintiff claimed, in addition to the damage caused by the injury to the remaining timber upon the land described, that he was entitled to damage on account of the timber cut and removed, and that such damage was measured by the value of the timber standing, or "stumpage," as it is called. To prove this value he introduced evidence, against defendant's objection, of the value of the logs and lumber made from the timber taken from this land at the mill, and also the cost and expense intermediate the timber standing and lumber at the mill, which deducted from the value at the mill, he claimed would show the real value of the stumpage. The defendant, on the other hand, claims that this result gives too high value of stumpage, inasmuch as it includes all the profits and increased value which attach to the change in the commodity and location, which represents the capital invested and the hazard of the enterprize, and which is not measured simply by the actual cost of cutting, transportation and manufacture, but includes besides the element termed "profit."

It was said in *Gilbert v. Kennedy* 22 Mich. 117, which was an action of trespass, that "To deny the injured party the right to recover any actual damages in such cases, because they are of a nature which cannot be thus certainly measured, would be to enable parties to profit by and speculate upon their own wrongs, encourage violence, and invite depredation. * * And * * where, from the nature of the case, adequate damages cannot be measured with certainty by a

fixed rule, all the facts and circumstances tending to show such damages as are claimed in the declaration, or their probable amount, should be submitted to the jury to enable them to form, under proper instructions from the court, such reasonable and probable estimate as in the exercise of good sense and sound judgment they shall think will produce adequate compensation." The method pursued by the plaintiff was proper, as in this manner the evidence tended to show the actual damage sustained by the injured party. Indeed, the value of stumpage is largely controlled by the expense which it is necessary to incur in conveying the timber from the place of cutting to the place of manufacture; and in most instances these can be arrived at or estimated with a considerable degree of certainty. The profit which results to the owner or operator from the transaction is also capable of being estimated with a like degree of certainty, and can be ascertained from the examination or cross-examination of witnesses.

The record before us shows that the value of the stumpage was proved in various ways, from the bare opinion of its value to that which was deduced from the value of the manufactured lumber; thus affording the jury ample evidence from which to arrive at a just conclusion as to the amount of damage the plaintiff was entitled to be awarded as a compensation for the injury sustained.

The court permitted the plaintiff's counsel, on cross-examination of defendant, to ask him if he ever made Mr. Skeels an offer for the pine that stood on that particular eighty; and this constitutes defendant's twenty-first allegation of error. The question was proper, as bearing upon the value of the pine before it had been cut by defendant. *Dorrity v. Russell* 7 Bosw. 539.

We have now commented upon the principal allegations of error, and all that require discussion, except the last, which relates to the error of the court in trebling the plaintiff's damages. This exception we think well taken. The record does not disclose a case for trebling the damages under the statute; but as the trial was fair, and the verdict of the

jury appears to be warranted by the testimony, and as we can see no reason for a different result being reached by a retrial, which evidently would be attended with a considerable expense, we shall reverse the judgment, with costs, as to the treble damages, and

Affirm the judgment for single damages in the amount found by the jury.

CAMPBELL and SHERWOOD, JJ. concurred. COOLEY, C. J. did not sit.