SAMUEL R. MILLER v. BENJAMIN F. WELLMAN.

*Trespass—Removal of timber—Possession—Burden of proof—Damages—Evidence.*

1. To maintain trespass, the plaintiff must have either *actual* or *constructive* possession of the land, and *constructive* possession cannot exist where there is an *actual* adverse possession. *Ruggles v. Sands*, 40 Mich. 561.

2. Trespass, under the statute, may be brought by the land-owner, regardless of the question of possession.

3. In an action of trespass against one in possession, the burden of proof is upon the plaintiff to show t tle to the land trespassed upon.

4. The measure of damages in a statutory action of trespass is the value of the timber if standing, and the d minished value of the estate by reason of its removal. *Skeels v. Starrett*, 57 Mich. 354.

5. The price at which timber cut by a trespasser sold, less the cost of cutting and marketing it, is s( me evidence of its value, though not conclusive.

Error to Kent. (Grove, J.) Argued April 17, 1889. Decided June 21, 1889.

Trespass to lands. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Smedley & Irwin,* for appellant.

*Clark H. Gleason,* for defendant.

LONG, J. In 1881 plaintiff purchased of Robinson, Letellier & Co., on a land contract, the south half of north half of

north-east quarter of section 5, township of Tyrone, Kent county, Michigan, and in 1888 obtained a deed thereof.

On the same day defendant purchased, by like contract from the same parties, the north half of north half of north-east quarter of the same section.

Plaintiff and defendant each at once went into possession of the land he supposed belonged to him, and continued in possession thereof to the time of the commencement of this suit.

The boundary line between the two parcels of land has been more or less in dispute; the parcel in controversy being about eight rods in width at one end and tapering to a point at the other.

Soon after this purchase, and in 1881 or 1882, defendant built a division fence between him and the plaintiff along the south side of this disputed strip, and from that time had been in possession of this strip, cut timber therefrom in 1885 and 1886,—some pine, ash, and basswood trees.

Defendant claims that these trees were all cut and removed from the land not later than December, 1885, more than two years prior to the commencement of the suit, and with permission of the plaintiff, while the plaintiff claims that they were cut and drawn away on or about February 15, 1886.

This action is trespass *quare clausum*, with a count added for treble damages under the statute for cutting and carrying away this timber.

On the trial in the court below defendant had verdict and judgment.

Plaintiff brings error.

The action was commenced on February 6, 1888.

The declaration contains five counts. The first four are common-law counts, and the last is the statutory count resting on chapter 272, How. Stat., relating to trespass on land.

The pleas are the general issue, the statute of limitations, title in fee to and actual possession of the lands whereon the

alleged trespass was committed, with license to enter and do the acts constituting the trespass; and notice that, if committed by the defendant, the trespass was casual and involuntary, and that defendant had probable cause to believe that the land upon which the alleged trespass was committed was his own.

On the trial the plaintiff waived all claim for treble damages, and the defendant introduced in evidence the land contract and deed, and gave evidence tending to show his possession since 1881 of the land described in the deed.

The plaintiff also introduced his contract and deed, and testimony tending to show possession in himself since 1881 of the land mentioned therein, and evidence tending to show that the boundary line between these two pieces of land had always been in dispute and undetermined prior to the alleged trespass, and that afterwards he had caused a survey to be made of the north half of that fractional quarter section, dividing the same into two equal parts by running a line east and west, so as to give the same number of acres north of the line as south of it,—about forty-eight ac es in each parcel,— and that the line so run by the surveyors was about eight rods north of the line where the defendant had built his fence; that prior thereto defendant had cut and carried away the timber, though he had forbidlen him to cut or carry the same away.

Plaintiff also introduced testimony tending to show that he had always claimed this strip of land, and had attempted to cut timber thereon, but had been prevented by defendant.

He also gave testimony of the value of the timber, and that the same was cut and removed within two years before the commencement of the suit, and that the value of the land was decreased by the removal of such timber.

The defendant's claim is, and testimony was introduced tending to show the facts, that he never was forbidden by the plaintiff to cut or remove the timber; that in 1881 or

1882 he built the division fence, inclosing this disputed strip, on what he considered the boundary line, and had been in continuous possession of this strip up to said fence until after the alleged trespass, claiming to own it, cultivating a portion of it, and pasturing the balance; but that at the time of the trial the fence was on the line established by the survey.

Defendant also introduced testimony tending to show that it cost as much or more to cut and carry away, and get into market, the timber so taken as l e received for it; also that the value of the land was increased, rather than decreased, by the removal of the timber; that the best class of timber—the green pine—was sold for six dollars per thousand feet, and the cost of cutting and getting to market was three dollars; that the ash was sold for five dollars, and cost over three to cut and market it, and that the balance cost more to cut and market than it brought in the market; that the land from which it was cut was stump land, and had been lumbered over, and all that was considered of value then taken off; and that no timber had been cut or removed within the two years next prior to the commencement of the suit.

Upon the issue so made the cause was submitted to the jury.

The court charged the jury as follows:

"If you should find that, at the time of the commission of these alleged trespasses, the defendant was in possession of the land where the timber was cut, the plaintiff will not be entitled to recover under either of the first four counts of the declaration.

"In considering the last or fifth count of the declaration, the question of possession is not involved. The action is trespass for cutting down and carrying off certain timber from certain lands in Tyrone township, in this county, without the leave of the plaintiff, who claims to be the owner thereof."

There is no contention over this portion of the charge.

There are three errors assigned, and all relate to the fol-

lowing from the charge of the court, or to other portions thereof:

"If you find from a fair preponderance of the evidence that the plaintiff, at the time of the commission of the alleged trespass, was the owner of the land whereon the same was committed; that the defendant, within two years prior to the commencement of this suit, cut down or carried off timber of any of the kinds described in the declaration, namely, green pine, dry pine, basswood, and black ash, on the land described in the declaration, without leave of the plaintiff,—then the plaintiff is entitled to recover in this action.

"Upon the question of ownership the contracts and title deeds produced in evidence afford conclusive proof.

"The question of title should be determined by these documents; and, in order to determine whether the alleged trespass was committed on the land owned by the plaintiff or on the land owned by the defendant you will ascertain the location of the boundary line between them. As a matter of law, that boundary line is midway between the north and south lines of the north half of the north-east fractional quarter of section five."

It is contended by counsel for the plaintiff that the court erred in instructing the jury that they must find that the plaintiff was the owner of the land, as the plaintiff might maintain trespass though he was not the owner, if he was in possession at the time the trespass was committed, and that he was in possession under his contract at that time.

We think there is no error in this part of the charge. It conclusively appears, and there seems to be no dispute upon the question, that the defendant was in possession of this strip from 1881 or 1832; had it fenced in with his land; improved and cultivated it, claiming to be the owner. He was in actual possession and occupancy at the time of the alleged trespass. The boundary line was in dispute, but that was not ascertained until the survey was made, long after the timber was cut and carried away.

By the pleadings, and by the evidence, the issue was made as to the ownership of this strip, the defendant claiming to

own it and the timber he cut from it, and it was for the jury to say, under the evidence, where the line was.

Trespass can be brought only by one in actual or constructive possession, or by one who has the title. Plaintiff could not be in constructive possession of land which was in defendant's actual adverse possession. Plaintiff must either own the land, or have possession of it under color and claim of title, in order to maintain his action.

The charge of the court presented the case to the jury under plaintiff's claim of ownership, and instructed the jury that possession was necessary to recover under the first four counts, while under the fifth count possession is not essential, but ownership is sufficient.

The jury were further instructed that the contract and title-deeds were conclusive proofs of ownership, but the court added:

"In order to determine whether the alleged trespass was committed on the land owned by the plaintiff or on the land owned by the defendant, you will ascertain the location of the boundary line between them. As a matter of law that boundary line is midway between the north and south lines of the north half of the north-east fractional quarter of section five."

The survey made by plaintiff was not final, and did not determine the disputed boundary. It became a question of fact for the jury to determine, and if the timber was cut on land defendant owned, and which was not included in plaintiff's contract and deed, plaintiff could not recover. The burden was upon him to show that the timber was cut on land which he owned, as he was not in possession; and the only question in doubt was as to whom this disputed strip belong d, and where was the dividing line. The jury could not have been misled by this charge, and we do not think it open to the criticism made upon it by plaintiff's counsel.

It is also contended that the court was in error in the following portion of the charge:

" If you find that the value of the timber standing was less than the cost of cutting it and getting it to market, then upon that element of damages there is not any margin. If you find it was less or equal, then there would be no damages upon that element. If you find the land was not decreased in value by the taking of the timber off of it, then there is no damage arising from the diminishing of the value of the estate. So that if you should find that the value of the estate was not diminished by the taking off of the timber, and that the timber after it was taken off did not exceed in value the cost of taking it off and getting it where it would be available in the market, then your verdict would be for the defendant."

In this the court was in error. It appears that the defendant did make a profit on some of the timber, and there is no contention but that some of it, at least, was valuable. The trespass appears to have been committed, if committed at all, by the defendant under the belief that the land upon which it stood was his. He was in actual possession and occupancy, claiming to own it. There is no contention but that it was taken and carried away. If, however, the jury should find that the plaintiff was the actual owner of the land at the time of its taking, then the measure of his damages would be the value of the timber standing upon the land, and the diminished value of his estate, if any, by reason of its removal. *Skeels v. Starrett,* 57 Mich. 354 (24 N. W. Rep. 100); 3 Suth. Dam. 374.

As was said in *Isle Royale Mining Co. v. Hertin,* 37 Mich. 337:

" It cannot be assumed, as a rule, that a man prefers his trees cut into cordwood rather than left standing, and, if his right to leave them uncut is interfered with, even by mistake, it is manifestly just that the consequences should fall upon the person committing the mistake."

The rule laid down by the court was not supported by the testimony, the defendant himself admitting that the trees or som · of them were sold at a profit, and, if the plaintiff was ent tled t ﹀ recover at all, it would have been at least the.

value thus shown.   The price at which it sold, deducting the cost of cutting and marketing, would be some evidence of value, though it would not be conclusive.

For the error in *this* part of the charge, the judgment of the court below must be reversed, with costs, and a new trial ordered.

The other Justices concurred.