300 So.2d 94

**Burl RUSHING**

v.

**HOOPER–McDONALD, INC.**

**SC 696.**

Supreme Court of Alabama.

Sept. 5, 1974.

Powell & Sikes, Andalusia, for appellee.

Charles J. Kettler, Jr., Luverne, for appellant.

HEFLIN, Chief Justice.

This case arose and was tried before the implementation of the new Alabama Rules of Civil Procedure. The appeal is from a judgment in favor of the defendant after the trial judge gave the general affirmative charge with hypothesis.

Appellant-plaintiff Burl Rushing's amended complaint contained eight counts, each alleging a trespass to "the fish pond and surrounding banks and lands known as Bonners Fish Pond." Each count claimed damages in the sum of $30,000.00 and asked for punitive damages.

Count One alleged a trespass in April, 1968; Count Two, in May, 1969; Count Three, in July, 1969; Count Four, in September, 1969; Count Five in August, 1970; Count Six, in January, 1971; Count Seven, in March, 1971; and Count Eight alleged a continuing trespass during the period from April 1, 1968, to March 31, 1971.

Plaintiff Burl Rushing does not own the pond or the surrounding land, but claimed possession as a sublessee from his brother Lawrence Rushing, who had leased the property from its owner. Plaintiff claimed to have gone into possession of the pond in 1965 or 1966 as sublessee to his brother; he testified that his brother held under a written lease at that time, but no written lease was introduced covering the period prior to January 1, 1969.

There was introduced a written lease from the owner of the pond, Mrs. Mary Alice Thames (whose maiden name was Bonner), to Plaintiff's brother, Lawrence Rushing, which recited that the lease would cover a 5-year period from January 1, 1969, to December 31, 1974 [The dates indicate a 6-year period]. The terms of the lease covered " . . . a fish pond in the City of Andalusia, Alabama, known as Bonners Fish Pond . . . ," and the lease contained the following condition:

"3. This lease covers the right to ingress and regress over and across surrounding lands for the purpose of allowing the free use of said fish pond and the banks thereof by Lessee, his guests and licensees."

The lease made no mention of any other part of the Thames tract of land on which the pond was located.

Appellee, Hooper-McDonald, Inc. (Defendant), owned land uphill from and bordering the Thames tract on which the fish pond was located. Plaintiff testified that on seven occasions the defendant emptied asphalt or asphalt-type materials so that they ran downhill onto the Thames tract and thence into a stream which carried them to the pond, with the results that the pond was polluted and fish were killed or otherwise rendered unmerchantable.

Plaintiff Rushing testified that some of the asphalt was dumped on the defendant's property, some on the Thames property, and some on a dedicated public street (which was grown up in woods) between the properties. However, there was no evidence that the defendant dumped any of the asphalt directly into the pond or onto the banks of the pond, except in one clean-up effort.

At the close of the plaintiff's evidence the trial judge gave the general affirmative charge with hypothesis. The trial judge gave his reason for giving the affirmative charge:

"I am holding as a matter of law that the lease * * * [covered] a fish pond with the right of ingress and regress and the right to use the banks for the purpose of fishing. There is nothing in there that says they got any leasehold in the adjacent property. And I'm going to rule as a matter of law that all of the evidence in this case shows a dumping either on somebody else's land or land on which the plaintiff did not have any leasehold interest, therefore his remedy would have been action in case and not by trespass. I am going to give the affirmative charge."

The judge then explained to the jury that his decision was based on the common law distinction between trespass and trespass on the case, stating that the plaintiff had sued in trespass when he should have sued in negligence.

Plaintiff's argued assignments of error are all based on the contention that it was error for the trial judge to give the affirmative charge.

The plaintiff raises a case of first impression when he argues that the trial court erred in giving the general affirmative charge, contending that a trespass need not be inflicted directly on another's realty but may be made by discharging foreign or polluting matter at a point beyond the boundary of such realty. Thus, the plaintiff presents this question: Can a trespass be committed by one who discharges asphalt in such a manner that it will in due course invade a neighbor's realty and thereby cause harm? This court answers in the affirmative.

A trespass may be committed by disturbing the possession of the occupant, though the person committing the trespass does not actually go on the premises, as by throwing water or missiles on the land, or removing a partition fence, though the trespasser does not place his foot on the land. Louisville and N. R. R. Co. v. Higginbotham, 153 Ala. 334, 44 So. 872 (1907).

In 87 C.J.S. Trespass, § 13c, it is stated:

"The entry need not be in person but may be by the projection of force beyond the boundary of the land where the projecting instrument is employed. Thus, the trespass may be committed by casting earth, or other substances, upon another's land, by projecting anything into, over, or upon the land; by discharging water thereon, or by felling trees so that they fall upon the land * * *"

Restatement, Second, Torts, § 158, Liability for Intentional Intrusions on Land, recites:

"One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally

(a) *enters land* in the possession of the other, *or causes a thing* or a third person *to do so,* or

(b) remains on the land, or

(c) fails to remove from the land a thing which he is under a duty to remove." (Emphasis supplied)

In the Comments under this Restatement section appears the following:

"i. *Causing entry of a thing.* The actor, without himself entering the land, may invade another's interest in its exclusive possession by throwing, propelling, or placing a thing either on or beneath the surface of the land or in the air space above it. Thus, in the absence of the possessor's consent or other privilege to do so, it is an actionable trespass to throw rubbish on another's land, even though he himself uses it as a dump heap, or to fire projectiles or to fly an advertising kite or balloon through the air above it, even though no harm is done to the land or to the possessor's enjoyment of it. *In order that there may be a trespass under the rule stated in this Section, it is not necessary that the foreign matter should be thrown directly and immediately upon the other's land. It is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter.* Thus one who so piles sand close to his boundary that by force of gravity alone it slides down onto his neighbor's land, or who so builds an enbankment that during ordinary rainfalls the dirt from it is washed upon adjacent

lands, becomes a trespasser on the other's land." (Emphasis supplied)

See Martin v. Reynolds Metals Co., 221 Or. 86, 342 P.2d 790, cert. denied, 362 U.S. 918, 80 S.Ct. 672, 4 L.Ed.2d 739 (1959) and Furrer v. Talent Irrigation District, 258 Or. 494, 466 P.2d 605 (1970). Compare W. R. Ratliff Co. v. Purvis, 292 Ala. 171, 291 So.2d 289 (1974).

■ This court holds that it is not necessary that the asphalt or foreign matter be thrown or dumped directly and immediately upon the plaintiff's land but that it is sufficient if the act is done so that it will to a substantial certainty result in the entry of the asphalt or foreign matter onto the real property that the plaintiff possesses. Therefore the trial court erred in giving the general affirmative charge.

The defendant contends that the injury here is not direct and immediate but is a mere consequence of the acts complained of. It argues from the cases of City of Fairhope v. Raddcliffe, 48 Ala.App. 224, 263 So.2d 682 (1972) and Howell v. City of Dothan, 234 Ala. 158, 174 So. 624 (1937) to show that injuries from consequential acts must be remedied in an action based on trespass on the case rather than in trespass. In *Raddcliffe* the damages claimed against the city were for allegedly causing or allowing its sewer line to overflow and, flood the plaintiff's house. The sewer line was stopped up by rags and clothing at a point below the house, causing the sewerage to back into and flood the plaintiff's house. Speaking to the complaint, the court in *Raddcliffe,* stated:

"This is not a charge of application of direct force against the property of plaintiff. It has been held that the Supreme Court of Alabama in a long line of cases that an action for overflow of land by obstructing the flow of drainage is one of trespass on the case. Howell v. City of Dothan, 234 Ala. 158, 174 So. 624; Pan American Petroleum Co. v. Byars, 228 Ala. 372, 153 So. 616. The

sustaining of demurrer to appellant's plea of the statute of limitations of one year to Count One was error."

*Raddcliffe* is distinguishable from the case at bar in that here there was no obstruction that caused the flow of asphalt onto the plaintiff's possessed realty; rather the flow was direct. The *Howell* case involved a bill in equity to enjoin a nuisance and the failure of the plaintiff to file claims against the City of Dothan within a statutory time limit. Likewise, as in *Raddcliffe,* obstructions caused the flow of pollution onto the plaintiff's property. That case is clearly distinguishable from the one under review. The obstructions in these cases were not intentional as was the damming of a stream that backed up water on another's property in W. T. Ratliff Co. v. Purvis, supra, where such was held to constitute wantonness.

■ Under the facts of the instant case the jury should have the right to determine whether there was an intentional intrusion onto the realty of which the plaintiff claimed that he was in possession.

Next, the appellant Rushing argues that the trial court erred in holding as a matter of law that the plaintiff possessed only the pond and its banks and not the entire Thames tract, contending the evidence reflected that he was in possession of the entire Thames tract irrespective of the limitations of the lease. Since this court has held that the plaintiff has a jury issue for trespass to realty in regard to foreign materials flowing into the pond, there is no reason for the plaintiff to have to prove possession of the entire Thames tract. Therefore, the court will not address itself to this issue.

The defendant contends that there was no proof of any proper element of damage, thus justifying the giving of the general affirmative charge by the trial judge. It contends that the proper measure of damages for recovery for trespass to land is the difference in the value of the land immediately before and after trespass, citing

Hammond v. Stephens, 269 Ala. 210, 112 So.2d 324 (1959); Dollar v. McKinney, 267 Ala. 627, 103 So.2d 785 (1958); McCall v. Busey, 244 Ala. 162, 12 So.2d 401 (1943); and Lee v. Gidley, 252 Ala. 156, 40 So.2d 80 (1949).

■ In this case the plaintiff makes a claim for punitive damages. It is the rule in this state that proof of nominal damages will support a claim for punitive damages. This court stated in the case of Maring-Crawford Motor Co. v. Smith, 285 Ala. 477 at 486, 233 So.2d 484 at 492 (1970):

"While some jurisdictions have held that compensatory damages are essential to support an award of exemplary or punitive damages, it is the doctrine of our cases, as well as that of a substantial number of other states, that an award of nominal damages authorizes, in the discretion of the trier of fact, the award of punitive damages where legal malice, willfulness, and a reckless disregard accompanies the invasion of the rights of another. It would appear in such situations that 'nominal damages' are considered within the context of 'actual damages.' Louisville and Nashville R. R. Co. v. Smith, 141 Ala. 335, 37 So. 490; Goodson v. Stewart et al., 154 Ala. 660, 46 So. 239; Alabama Great So. R. R. Co. v. Sellers, 93 Ala. 9, 9 So. 375; Burk v. Knott, 20 Ala.App. 316, 101 So. 811."

See Ramos v. Fell, 272 Ala. 53, 128 So.2d 481 (1961); Dawsey v. Newton, 244 Ala. 661, 15 So.2d 271 (1943); Stockburger v. Aderholt, 204 Ala. 557, 86 So. 464 (1920); and Foust v. Kinney, 202 Ala. 392, 80 So. 474 (1918).

■ A jury is warranted in awarding punitive damages in the case of trespass if the trespass is attended by rudeness, wantonness, recklessness or an insulting manner or is accompanied by circumstances of fraud and malice, oppression, aggravation, or gross negligence. Ramos v. Fell, supra; Lienkauf & Strauss v. Morris, 66 Ala. 406 (1880); and Sugar Valley Land Co. v.

Johnson, 17 Ala.App. 409, 85 So. 871 (1920).

■ The proof in this case warrants a jury determination of nominal damages. Further, the evidence was supportive of a jury issue pertaining to punitive damages in the event a jury felt the plaintiff should recover nominal damages.

■ Several cases from this court have held that a plaintiff could recover for mental suffering which was the proximate consequence of a trespass to property, if the trespass was committed under circumstances of insult or contumely. Walker v. Ingram, 251 Ala. 395, 37 So.2d 685 (1948); Dawsey v. Newton, 244 Ala. 661, 15 So.2d 271 (1943); B. F. Goodrich Co. v. Hughes, 239 Ala. 373, 194 So. 842 (1940); Holder v. Elmwood Corp., 231 Ala. 411, 165 So. 235 (1936); Mattingly v. Houston, 167 Ala. 167, 52 So. 78 (1910). In J. B. McCrary Co. v. Phillips, 222 Ala. 117, 130 So. 805 (1930) this court held the plaintiff could recover for fright and mental suffering which were the proximate and natural consequences of repeated trespasses occurring when blasted rock was thrown on the house and premises. In the case under review such damages are alleged and the evidence is sufficient to support the submission to the jury of this claim.

In each count of the complaint the plaintiff claims damage to the fish living and growing in the fish pond. There was evidence that fish were killed and damaged. There was testimony that the plaintiff drained the fish pond, cleared the fish pond, removed the game fish from it and replaced such with catfish. Each count of the complaint alleges that the discharge of the asphalt was made

". . . on said date and at said time in wanton disregard of and with reckless indifference to the rights of the Plaintiff without lawful excuse or justification, and *did thereby damage, destroy, contaminate, or pollute* [property in the plaintiff's possession], the fish pond situated thereon, the waters therein con-

tained, and *the fish living and growing within said waters,* and thus render the same valueless, useless, polluted, contaminated, damaged, ruined, and unfit, all to the damage of the Plaintiff as a direct and immediate result of the said trespass of the Defendant as aforesaid, hence this suit." (Emphasis supplied)

■ On the retrial of this case, undoubtedly, the question will arise as to whether or not the trial judge may charge the jury pertaining to damages for the destruction of or injury to fish. This involves the inquiry of whether fish are real or personal property.

In People v. Morrison, 194 N.Y. 175, 86 N.E. 1120, 128 Am.St.Rep. 552 (1909), the defendant was charged with larceny of some clams and oysters from a staked area of Jamaica Bay. The court stated:

"When clams or oysters are reclaimed from nature and transplanted to a bed where none grew naturally, and the bed is so marked out by stakes as to show that they are in the possession of a private owner, they are personal property and may become the subject of larceny. Although in the nature of *ferae naturae* to which a qualified title may be acquired by possession, when reclaimed and transplanted, they need not be confined, for, as they cannot move about, they cannot get away, even when placed in the water, as they must be in order to live."

In Reese v. Qualtrough, 48 Utah 23, 156 P. 955 (1916), the Supreme Court of Utah held that fish in a fish pond must be regarded as personal property. While this court disagrees with some of the other holdings in that case it, nevertheless, agrees that fish in a fish pond must be regarded as personal property and so holds.

■ The next question that arises is whether or not in a suit for trespass to land there can be recovery for damaged or destroyed personal property. In Central of Georgia Ry. v. Barnett, 220 Ala. 284, 124 So. 868 (1929), the following language appears:

"While the general rule as recognized by our cases is that, in trespass to real estate for injury to the realty itself, the difference in the market value of the land immediately before, and after the trespass is the measure of plaintiff's damages. Brinkmeyer v. Bethea, 139 Ala. 376, 35 So. 996; Southern Ry. Co. v. Cleveland, 169 Ala. 26, 53 So. 767.

"Nevertheless, if it be shown that not only injury to the real estate was suffered, but that valuable property was taken or destroyed, there is no reason why the plaintiff should not recover for such loss. Any other rule would enable the trespasser to profit by and speculate upon his own wrong, would encourage "violence, and invite unwarranted depredations upon the rights and property of others. Skeels v. Starrett, 57 Mich. 350, 355, 356, 24 N.W. 98."

Section 162 of Restatement, Second, Torts, is as follows:

"§ 162. Extent of Trespasser's Liability for Harm.

"A trespass on land subjects the trespasser to liability for physical harm to the possessor of the land at the time of the trespass, or to the land or *to his things*, or to members of his household or to their things, caused by any act done, activity carried on, or condition created by the trespasser, irrespective of whether his conduct is such as would subject him to liability were he not a trespasser." (Emphasis supplied)

Thus in the instant case the plaintiff is entitled to have a jury pass on the issue of damage to his fish.

For the error noted this cause is reversed and remanded.

Reversed and remanded.

MERRILL, HARWOOD, MADDOX and FAULKNER, JJ., concur.