(No. 52611.—

GERALDINE DIAL, Appellee, v. THE CITY OF O'FALLON, Appellant.

*Opinion filed September 29, 1980.*

Koebel & Merkel, of O'Fallon, for appellant.

Jeanne Sathre and Jack Carey, of Cohn, Carr, Korein, Kunin, Schlichter & Brennan, of East St. Louis, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

Following a jury trial in the circuit court of St. Clair County, the defendant, the city of O'Fallon, was found liable to the plaintiff, Geraldine Dial, for causing sewer

water to back up into the plaintiff's house. Mrs. Dial was awarded $23,000 in damages. The appellate court affirmed the judgment of the trial court. (75 Ill. App. 3d 782.) We granted leave to appeal.

The defendant raises two issues on appeal. The primary issue is whether the city's conduct was sufficient to constitute a trespass to land. The second issue is whether the trial court erred in denying the defendant the right to present certain evidence concerning the reason why the city had caused the sewer water to back up onto plaintiff's property.

The pertinent facts of the case are not disputed. The city of O'Fallon installed a sewer system in about 1926. In 1961, due to backups into homes serviced by the system, the city built an overflow outlet on East Madison Street. The overflow was to relieve pressure in the sewer system during periods of heavy rainfall; it proved successful in preventing backups into nearby homes. However, when water escaped through the overflow, raw sewage was also discharged into an open ditch that flowed into a neighboring pond. In December 1974, the city of O'Fallon closed the overflow. During trial, the trial court refused to allow the city to present evidence that it closed the overflow because it violated State environmental regulations and as part of a settlement of a nuisance suit filed against the city for dumping raw sewage into the pond.

On January 10, 1975, and on subsequent dates, sewage backed up into the plaintiff's house following heavy rainfall. The January 10 backup was the worst, causing water to accumulate in the plaintiff's finished basement to a height of 25½ inches. The lower level of the plaintiff's modern, ranch-style home contained a family room with fireplace and built-in bookshelves, bedroom, closet, bath and utility room with washer, dryer, furnace and water heater. The walls were watermarked, and the tile floor was damaged, as were the

furnishings, appliances and many irreplaceable family items such as family photographs and slides. The lower level of the house was virtually unusable for a year, and the plaintiff had to expend considerable time, effort and money in repairing the floor, repainting the walls, and replacing and removing damaged personalty.

During the trial, the city engineer testified that the city knew the blocking of the overflow would cause some back-up, although they were not aware that it would be as severe as it was. From January until April or May 1975, when the city reopened the overflow, the city attempted to alleviate the pressure in the sewer system by pumping the water from the sewers into open ditches during periods of heavy rain. The defendant used either large or small pumps, depending upon the amount of water in the system. The backups into Mrs. Dial's home ended after the overflow was reopened in April or May 1975. During trial, the plaintiff valued the personal property destroyed by the inundations at $3,500. In addition, she called as an expert witness a real estate appraiser who testified that the value of her home had depreciated 30% due to the water damage.

Plaintiff was one of several homeowners who had filed a complaint against the city; however, plaintiff's case was severed from the others for trial. Her case, as were the others, was alleged in three counts, each seeking recovery for the damages caused by the backing up of the water into her home on separate theories: negligence, trespass to land, and strict liability. The strict liability count was stricken. Although no reference is made to this fact in the briefs, it appears from a colloquy by the court and counsel prior to the trial of plaintiff's case that the city of O'Fallon had liability insurance and that the insurance company had settled the negligence count and that a covenant not to sue had been executed. The colloquy also discloses that the insurance company was not defending

the trespass to land count because there had been a declaratory judgment that the trespass to land action was not covered by the insurance policy but that the negligence action was. Since we do not have the file in the action in which the declaratory judgment was entered, and since we have not examined the covenant not to sue, we can express no opinion as to the propriety of the settlement of the negligence count and proceeding to trial on the count based on the theory of trespass to land. From all of the allegations, however, it appears that the separate counts were simply stating different theories of recovery for one injury.

On appeal, the city contends that although negligent in maintaining the sewer system, its conduct does not give rise to liability on the theory of trespass to land.

Historically, the requirements for the common law action of trespass were that the invasion be a direct result of the defendant's act and interfere with plaintiff's interest in the exclusive possession of his land. Trespass was strictly distinguished from the action of case and, for the most part, these two forms of action were mutually exclusive. Case was proper where the injury was consequential rather than direct. Most harms arising out of negligence could be more conveniently remedied in case since it was not necessary to allege and prove that the harm was the direct and immediate result. (1 F. Harper & F. James, Torts secs. 1.2 to 1.4, at 5-16 (1956); W. Prosser, Torts sec. 13, at 63-68 (4th ed. 1971).) In 1933 this State, as other States had done, adopted revised procedures of pleading in the Civil Practice Act, section 31 of which, prior to its amendment in 1976, provided:

> "Neither the names heretofore used to distinguish the different ordinary actions at law, nor any formal requisites heretofore appertaining to the manner of pleading in those actions, respectively, are necessary or appropriate ***. This section does not affect in any way

the substantial averments of fact necessary to state any cause of action either at law or in equity." (Ill. Rev. Stat. 1975, ch. 110, par. 31.)

Before that, section 36 of the Practice Act of 1907 had abolished distinctions between actions of trespass and trespass on the case. (Ill. Ann. Stat., ch. 110, par. 31, Historical and Practice Notes (Smith-Hurd 1968).) Following these statutory enactments, it became important to distinguish between an intentional trespass to land and those which were the result of negligent conduct, only for the purpose of determining whether it was necessary to prove actual damages. 1 F. Harper & F. James, Torts sec. 1.4, at 12 (1956).

The conduct which today forms the basis of liability for the invasion of the interest in the exclusive possession of land may be of three general types: (1) conduct intended to cause an intrusion on the plaintiff's premises; (2) negligent conduct that causes an intrusion; and (3) conduct that is ultrahazardous and causes an intrusion, so that liability is said to be strict or absolute. The second type of invasion listed above is now governed by the general principles of negligence, and the third is thought of as included in the principles governing extrahazardous conduct, leaving only the first type of invasion wherein recovery may be sought purely on the basis of the tort of trespass. 1 F. Harper & F. James, Torts sec. 1.4, at 11-12 (1956).

We may summarize the Restatement (Second) of Torts on this subject as follows: (1) One is subject to liability for an intentional intrusion on land irrespective of whether he causes harm to a legally protected interest. (Restatement (Second) of Torts sec. 158, at 277 (1965).) (2) One is liable for negligent or reckless intrusion on land if he thereby causes harm to a legally protected interest. (Restatement (Second) of Torts sec. 165, at 300 (1965).) (3) And one is not liable for an unintentional nonnegligent

intrusion on land even though the entry causes harm to a legally protected interest. (Restatement (Second) of Torts sec. 166, at 304 (1965).) Under section 158 of the Restatement (intentional intrusion), or section 165 (negligent or reckless intrusion), a person is liable not only for his own entry but also if he causes a thing or third person to enter the land of another.

Although the allegations of the complaint refer only to a trespass without specifying whether the intrusion was intentional or negligent, it is apparent that the issue to be tried in our case was that of an intentional trespass to land and not a negligent intrusion. The colloquy between court and counsel before the trial started, which we discussed above, clearly demonstrates this. Counsel for the defendant stated he viewed the trespass alleged as an intentional tort. He moved to strike part of paragraph 6 of the trespass count because that allegation sounded in negligence. Since the insurance company had settled the negligence count and the negligence "portion of the case" had been disposed of, the court struck that part of paragraph 6 objected to. According to the Restatement, a person may be liable for an intentional intrusion on land for directly casting an object upon the property of another or for indirectly causing the intrusion if an act is done with knowledge that it will, *to a substantial certainty,* result in the entry of the foreign matter. Restatement (Second) of Torts sec. 158, comment *i,* at 278-79 (1965).

It is clear that the backup in the sewers resulted from the intentional closing of the overflow. The city engineer testified that, when the overflow was closed, it was assumed there was going to be some backup but they were not aware it was going to be as severe as it was. He also testified that the overflow originally had been installed as a result of some extremely heavy rainfall in 1961. An employee of the defendant's sewer department testified that he knew that when the overflow was closed there

would be some backup into some homes "if we got a heavy enough rain." In this case the defendant admits that it was negligent in maintaining and servicing the sewer system and argues that it is liable under a theory of negligence rather than trespass to land.

The only definition of trespass given to the jury read:

"Trespass need not be in person but may be by casting something on the land or projecting anything into, over, or upon the same.

The projection of any substance upon the lands of another without right is a trespass."

Thus the jury was not instructed as to the nature of the conduct required of the defendant to find it responsible for intentionally causing the substance to enter the land of another. As noted above, comment *i* to section 158 of the Restatement (Second) of Torts states that the act must be done "with knowledge that it will to a substantial certainty result in the entry of the foreign matter." The Restatement continues in that comment:

"Thus one who so piles sand close to his boundary that by force of gravity alone it slides down onto his neighbor's land, or who so builds an embankment that during ordinary rainfalls the dirt from it is washed upon adjacent lands, becomes a trespasser on the other's land."

Illustration 5 of the comment states:

"A erects a dam across a stream, thereby intentionally causing the water to back up and flood the land of B, an upper riparian proprietor. A is a trespasser."

The illustrations in the Restatement referred to above imply that a high degree of certainty that an intrusion of another's property will result from the act of the defendant is required to establish liability for intentional trespass: one must pile the sand on his land in such a manner that the force of gravity alone causes it to slide onto adjoining land; or one must build an embankment on his property in such a way that *ordinary* rainfalls wash it upon another's land; or one must erect a dam across a stream

intentionally causing water to back up on another's property. In each of these examples there is knowledge of a high degree of certainty that the intrusion on another's land will follow the act. This same knowledge of a high degree of certainty that the intrusion will follow the act has been required in other jurisdictions which have considered intentional intrusions of land by causing the entry of an object. In *Buchanan v. Cardozo* (1965), 24 App. Div. 2d 620, 262 N.Y.S.2d 247, it was held that the proof failed to show a voluntary affirmative act which *directly* caused the collapse of the wall even though the owner had knowledge of a previous partial collapse. In *Langford v. Kraft* (Tex. Civ. App. 1973), 498 S.W.2d 42, it was held that intentionally designing a storm-sewer facility to collect water from an entire area and discharge it upon an adjoining owner's property, where otherwise a part of the water would not have reached, was an intentional intrusion. In *Rushing v. Hooper-McDonald, Inc.* (1974), 293 Ala. 56, 300 So. 2d 94, it was held that the dumping of asphalt on land in such a way that it ran downhill onto adjoining land and entered a stream and polluted a pond constituted an intentional intrusion. In *Rushing* the court distinguished *City of Fairhope v. Raddcliffe* (1972), 48 Ala. App. 224, 263 So. 2d 682, which held that damages against the city for causing or allowing its sewer line to overflow and flood the plaintiff's house were recoverable in an action of trespass on the case and not trespass. The court, in *Rushing,* stated:

> "*Raddcliffe* is distinguishable from the case at bar in that here there was no obstruction that caused the flow of asphalt onto the plaintiff's possessed realty; rather the flow was direct." 293 Ala. 56, 60, 300 So. 2d 94, 97.

As indicated above one can be liable under present-day trespass for causing a thing or a third person to enter the land of another either through a negligent act or an

intentional act. Also, as noted above, it appeared from the colloquy between court and counsel before the trial started that it was the intention of the parties to consider the allegations of count II as an intentional trespass. However, the instructions given to the jury did not limit the jury to only the consideration of the "substantial certainty" requirement of an intentional trespass. Under the instructions given to the jury defining or explaining trespass, and under the issues instruction, the jury could find from the evidence that the plaintiff was entitled to recover from the city for a trespass. We therefore need not consider whether the evidence is sufficient under the decisions discussed herein and under the Restatement to hold the city responsible for an intentional trespass to plaintiff's land or whether the evidence establishes no more than a negligent intrusion. No question has been raised as to whether the jury was properly instructed as to the tort of intentional trespass. We must therefore affirm the judgment in favor of the plaintiff.

The defendant's insurance carrier apparently settled the cause of action alleged in the negligence count and received a covenant not to sue. We do not know who executed the covenant or to whom it ran. It would be logical to assume that the covenant was executed by Mrs. Dial and that it ran to the city of O'Fallon, since those parties were the plaintiff and defendant in the negligence count. It is also logical to assume that the settlement covered the same damage to property for which recovery was sought under the trespass action. At least the allegations in the two counts sought recovery for the same damage to property. The defendant does not here question the propriety of plaintiff's recovery under both counts. In the trial court, a motion to dismiss the trespass count was filed by the defendant alleging that the allegations duplicated the allegations of the negligence count. That motion was not ruled on by the trial court,

and the question was not again raised by the defendant. None of these issues are before us, and we are not in a position to rule on them.

The defendant also has not requested that the amount received by the plaintiff for the settlement with the insurance carrier in exchange for the covenant not to sue be set off against the damages awarded at trial of the trespass count. However, the courts in Illinois have long recognized the legal principle that a plaintiff shall have only one satisfaction for an injury (*Meneghin v. Thunander* (1962), 36 Ill. App. 2d 452; *DuPree v. Terry* (1971), 1 Ill. App. 3d 169; *Kurth v. Amee, Inc.* (1972), 3 Ill. App. 3d 506), irrespective of the availability of multiple theories that recovery for the injury can be sought under. In other words, if a party is injured by another he can bring the actions under several theories, *i.e.*, negligence, product liability, intentional tort, etc.; however, he will only be eligible for one recovery for his injury when seeking compensatory tort damages. The purpose of compensatory tort damages is to compensate for the injury suffered, not to punish defendants or bestow a windfall upon plaintiffs. (*Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 363.) Thus, damages that are awarded to a plaintiff to compensate for the injury suffered may properly be reduced by a court by the amount paid for a covenant not to sue. (See *New York, Chicago & St. Louis R.R. Co. v. American Transit Lines, Inc.* (1951), 408 Ill. 336, 342.) Therefore, on remand the trial court should determine the amount paid by the insurance carrier for the settlement of the negligence count, to whom it was paid, and the damage to property for which it was given. The court must then determine whether defendant is entitled to a setoff against the judgment entered on the trespass count.

The city also argues that it should have been permitted to introduce evidence that it closed the overflow as part of

a negotiated settlement of another lawsuit, and that its conduct in dumping raw sewage into an open ditch beside a public road was a violation of State environmental protection laws. This testimony did not serve to show any legal authority on the part of the city to discharge sewage upon plaintiff's property or any other material fact in issue. Testimony is irrelevant and properly excluded if it has no legitimate bearing upon, or relation to, any fact or issue in the case. (*People v. Kelly* (1942), 380 Ill. 589, 595.) The trial court did not abuse its discretion in excluding this testimony.

The judgment of the appellate court affirming the judgment of the circuit court of St. Clair County is affirmed. The cause is remanded to the circuit court for further proceedings in compliance with this opinion.

*Affirmed and remanded,*
*with directions.*