(628 P.2d 239)
No. 51,137

SANDIFER MOTORS, INC., *Plaintiff-Appellee,* v. THE CITY OF ROE-LAND PARK, KANSAS, *Defendant-Appellant.*

Petition for review denied July 15, 1981.

Opinion filed May 15, 1981.

*Richard T. Merker,* of Wallace, Saunders, Austin, Brown & Enochs, of Overland Park, for appellant.

*J. Roy Holliday, Jr.,* of Speer, Austin, Holliday, Lane & Ruddick, of Olathe, for appellee.

Before FOTH, C.J., PARKS and SWINEHART, JJ.

FOTH, C.J.: Plaintiff sued the City of Roeland Park for flood damage to its business sustained in September, 1975, by reason of a claimed nuisance maintained by the city on its adjoining property. The case was submitted to a jury on a theory of comparative negligence or comparative fault. The jury fixed plaintiff's damages at $30,607.03, allocating the fault 30% to plaintiff, 50% to defendant city, and 20% to unknown third parties. The city appeals from the judgment entered on the verdict raising two primary issues: that the evidence did not support a finding of nuisance, and that the doctrine of comparative fault should not have been applied. It also complains of certain evidence admitted which it claims violated a protective order entered on its motion in limine.

## I. EVIDENCE OF NUISANCE

Our Supreme Court restated the long-standing definition of nuisance in *Vickridge Homeowners Ass'n, Inc. v. Catholic Diocese of Wichita,* 212 Kan. 348, 354, 510 P.2d 1296 (1973), observing:

"The question of what constitutes a nuisance has been considered in many

decisions of this court. Most recently in the case of *Culwell v. Abbott Construction Co.,* 211 Kan. 359, 506 P.2d 1191, it was held:

'A nuisance is an annoyance, and any use of property by one which gives offense to or endangers the life or health, violates the laws of decency, unreasonably pollutes the air with foul, noxious odors or smoke, or obstructs the reasonable and comfortable use and enjoyment of the property of another may be said to be a nuisance.

'A private nuisance is a tort related to an unlawful interference with a person's use or enjoyment of his land. The concept of a private nuisance does not exist apart from the interest of a landowner.' (Syl. ¶¶ 1, 2.)

"The subject has also been considered in depth and many decisions discussed in the recent cases of *Baldwin v. City of Overland Park,* 205 Kan. 1, 468 P.2d 168; *Delight Wholesale Co. v. City of Overland Park,* 203 Kan. 99, 453 P.2d 82; and *Caywood v. Board of County Commissioners,* 200 Kan. 134, 434 P.2d 780."

The court in *Vickridge* also quoted a passage from *Hofstetter v. Myers, Inc.,* 170 Kan. 564, 228 P.2d 522 (1951), which defined nuisance this way:

"While the word nuisance is perhaps incapable of precise definition, yet in general it is held to be something which interferes with the rights of citizens, whether in person, property, or enjoyment of property, or comfort. It has also been held to mean an annoyance, and, in its broadest sense, that which annoys or causes trouble or vexation, that which is offensive or noxious, or anything that works hurt, inconvenience or damage. (See 66 C.J.S., Nuisances, § 1, p. 727). What may or may not constitute a nuisance in a particular case depends upon many things, such as the type of neighborhood, the nature of the thing or wrong complained of, its proximity to those alleging injury or damage, its frequency or continuity, and the nature and extent of the injury, damage or annoyance resulting. Each case must of necessity depend upon its own particular facts and circumstances." 170 Kan. at 568.

The sufficiency of plaintiff's evidence was raised by motion for a directed verdict. We therefore examine the evidence to determine whether there was evidence the city used its property in such a way as to obstruct the reasonable use of plaintiff's property. In so doing, we take the evidence in the light most favorable to plaintiff as the party against whom the motion was aimed. *Frevele v. McAloon,* 222 Kan. 295, Syl. ¶ 5, 564 P.2d 508 (1977).

Plaintiff's property was utilized as, among other things, an automobile salvage yard. In connection with its business it commenced in 1964 to improve the premises by erecting an office building and a 40-foot by 120-foot parts storage building. Because the land was low, plaintiff faced potential flooding from surface water and therefore elevated the base of its improvements and installed surface drainage controls consisting of culverts and earthen dikes or berms.

In addition, it constructed over a period of years an underground drainage system or storm sewer which was the source of its problems in this case. The sewer consisted of a network of concrete pipe with surface inlets to collect surface water, covered by steel grates. At the north end the system drained into Turkey Creek. At the south end was an open (*i.e.*, grateless) inlet, inadvertently placed several feet over the line between plaintiff's property and the city's. This inadvertent trespass was remedied while this action was pending; in our view it does not affect the issues before us.

It was admitted by plaintiff that the pipe sections of which the sewer was constructed were all factory seconds. Its evidence also showed, however, that the defects were minor and did not affect the system's capacity to function. It also appeared that the higher end of the system consisted of 30-inch diameter pipe which drained into 18-inch pipe in the lower part. This constriction would not impede the flow of anticipated water, but would be a natural catch point for any debris entering the system.

The defendant city owned the high land adjacent to plaintiff's on the south. Part of this land is a city park, but the portion immediately touching plaintiff's is unimproved and overhangs a ravine separating the two properties. Plaintiff's evidence was that the city used this portion of its property as an open dump for the deposit of assorted discarded street and traffic control signs, refrigerators, stoves, automobile parts, tires, brush, and other miscellaneous debris. Plaintiff's employees' testimony, although contradicted, was that the dumping was by city trucks as well as unidentified individuals. The mayor of the defendant city had inspected the premises and was aware of the condition.

Plaintiff's employees regularly patrolled that part of the city's property near the open sewer system inlet to remove debris which might wash into and clog it. Nevertheless, after a heavy rain the night of September 11, 1975, plaintiff's employees found debris (which they identified as coming from the city's property) had washed down the hill, through the ravine and into the sewer system. The system clogged and burst, and surface water which would otherwise have drained through the now clogged system overran the berms and flooded plaintiff's warehouse. The damages sought and awarded were for cleanup and for destruction of and damage to plaintiff's inventory.

To constitute a nuisance, the interference with plaintiff's use of its property must be both *substantial* and *unreasonable.* Prosser, Law of Torts § 87, p. 580 (4th ed. 1971). In this case there can be little doubt the flooding of the plaintiff's distribution center constituted a substantial interference with its use of its land. See *Vickridge,* 212 Kan. at 351 (surrounding homeowners complained that proposed inadequate drainage facilities jeopardized their homes); *Morris v. City of Kansas City,* 189 Kan. 52, 366 P.2d 788 (1961) (a flooded basement); *Davis v. City of Kansas City,* 204 Kan. 524, 464 P.2d 154 (1970) (improper drainage); *Scott v. Glenwood Township,* 105 Kan. 603, 185 Pac. 731 (1919) (damages from a culvert overflowing).

In denying its dump was a nuisance, the city relies heavily on the factors mentioned in *Helms v. Oil Co.,* 102 Kan. 164, 169 Pac. 208 (1917). They are restated in substance in *Sly v. Board of Education,* 213 Kan. 415, Syl. ¶ 1, 516 P.2d 895 (1973):

"What may or may not constitute a nuisance in a particular case depends upon many things, such as the type of neighborhood, the nature of the thing or wrong complained of, its proximity to those alleging injury or damage, its frequency, continuity or duration, and the damage or annoyance resulting. Each case of necessity must depend upon the particular facts and circumstances."

Of the elements listed, only the type of neighborhood weighs in favor of the city. The wrong complained of is having debris from a dump washed onto neighboring property; the dump was immediately adjacent to the injured party; it had continued over a considerable period of time and its potential for harm was apparent; and the damage was substantial. In our opinion the reasonableness of the city's use of its land was a fact question, and the trial court did not err in submitting that question to the jury.

On the issue of causation, the evidence also sustained the jury's findings that half the damage was attributable to the city's action in maintaining the dump, twenty percent to dumping by unidentified third parties, and thirty percent to design defects and other inadequacies in plaintiff's drainage system.

## II. COMPARATIVE FAULT

The city's second argument is that the court erred in submitting the case to the jury on a comparative fault theory. It did so, complete with an instruction defining negligence and with advice

as to the effect of the jury's answers to special questions on percentage of fault.

We are met at the outset with plaintiff's assertion that the point was not properly preserved in the trial court. The transcript reveals an extensive discussion of the instructions before the case went to the jury, with each side registering its objections one by one on the record. The only objection by the city to the comparative fault instruction went to that part of the instruction which advised the jury of the effect of its answers. (See *Thomas v. Board of Trustees of Salem Township,* 224 Kan. 539, Syl. ¶ 2, 582 P.2d 271 [1978], holding such advice proper.)

Without an objection in the record, we might well be justified in refusing to consider the point. See *Roitz v. Brooks,* 5 Kan. App. 2d 534, 619 P.2d 1169 (1980). However, the city asserts that it made its basic objection known during one of several off-the-record conferences. It finds some support for this contention in the trial court's comments in overruling the motion for a new trial, quoted below, where the court observed that the instruction had been given over the objection of both parties. The court in *Roitz* specifically noted the absence of any remarks on the record by the trial judge indicating an off-the-record conference took place in which the issue on appeal was raised. On this point, we distinguish *Roitz.* However unsatisfactory a silent record may be as a method of preserving points on appeal, in view of the importance of the issue and the ambiguity of the record, we give the city the benefit of the doubt and proceed to the merits.

The trial court's comments in ruling on the city's motion for a new trial explain its reasoning:

"I will further add, . . . while the Court notes that both counsel for the plaintiff and counsel for the defendant objected to the Court's ruling as to what instructions the Court was going to give, the Court feels that while the prior case law of Kansas shows that nuisance and negligence were separate, that negligence had no place in a nuisance action, that the Court felt that this case was really one of first impression to the Court, for the reason that all those prior decisions have been based when we were talking about a theory of contributory negligence, when we were talking about negligence actions, after July 1st, 1974, Kansas adopted in the place of contributory negligence the theory of comparative fault. I think that comparative fault, even though we speak of the term negligence within that theory of comparative fault, that that basically did away with the necessity . . . of separating nuisance actions from negligence actions. For that reason the Court feels that under comparative fault that a Court can submit it to the jury when the facts are such as they were in this case to decide on the basis of comparative fault."

Disagreeing, on appeal the city insists "nuisance and negligence are separate, and . . . negligence has no place in a nuisance action." While that may be true in some cases, in many nuisance cases, including this one, negligence plays an important role.

As noted under Part I above, an action in nuisance is grounded on an unreasonable interference with the plaintiff's use and enjoyment of his property irrespective of the care exercised to avoid the intrusion. Kansas cases have always recognized the dichotomy between the liability derived from conditions amounting to a nuisance and liability derived from ordinary lack of due care, commonly called negligence. *E.g., Asmann v. Masters,* 151 Kan. 281, 98 P.2d 419 (1940), 44 A.L.R.2d 1386; *Gilbert v. Construction Co.,* 110 Kan. 298, 203 Pac. 1113 (1922); *Helms v. Oil Co.,* 102 Kan. 164; *Bailey v. Kelly,* 93 Kan. 723, 145 Pac. 556 (1915).

While such cases emphasize an action for nuisance need not depend upon proof of negligence, and rightfully so, later opinions recognize the two concepts overlap and that nuisance and negligence often coexist. *Alexander v. City of Arkansas City,* 193 Kan. 575, 396 P.2d 311 (1964), was a suit alleging the city created a nuisance by operating a sewage plant near plaintiff's home. There our Supreme Court agreed with the plaintiff's basic contention on appeal that liability could not be avoided by a showing the defendant was free from negligence, but went on to recognize that negligent conduct may frequently give rise to a nuisance. It approved principles now appearing in 58 Am. Jur. 2d, Nuisances § 35, pp. 599-600:

"A nuisance may or may not be based on the negligent act of the one creating it. However, it frequently is the consequence of negligence, or the same acts or omissions which constitute negligence may give rise to a nuisance. *In fact, it has been said that in many, if not in most, instances the existence of a nuisance presupposes negligence. Unless a nuisance is based on action that is intentional and unreasonable, if an act or condition can become a nuisance only by reason of the negligent manner in which it is performed or permitted, a right of recovery cannot be shown independently of the existence of negligence.*

"A lawful action may become a nuisance by reason of its negligent performance. Thus, there are certain situations in which what was lawful may be turned into a nuisance by negligence in maintenance, and in which the danger, being a continuing one, is often characterized as a nuisance, although dependent upon negligence, as in the case of a highway out of repair. Also, negligent use may make a structure a nuisance which would not be a nuisance otherwise.

"Where the acts or omissions constituting negligence are the identical acts which it is asserted gave rise to a cause of action for nuisance, the rules applicable to negligence will be applied." (Emphasis added.)

See also *Carlson v. Development Co.,* 103 Kan. 464, 173 Pac. 910 (1918) (gas pipeline running along road may be a nuisance without proof of negligence, but negligence helped create it).

Most recently, in *Culwell v. Abbott Construction Co.,* 211 Kan. 359, 506 P.2d 1191 (1973), Justice Prager points out:

"Nuisance is a field of tort liability rather than a type of tortious conduct. Nuisance has reference to the interests invaded, to the damage or harm inflicted, and not to any particular kind of act or omission which has led to the invasion. Professor Prosser concludes that the attempt frequently made to distinguish between nuisance and negligence, for example, is based entirely upon a mistaken emphasis based upon what the defendant has done rather than the result which has followed, and forgets completely the well-established fact that negligence is merely one type of conduct which may give rise to a nuisance. (Prosser, Law of Torts, 4th Ed., § 87, p. 573.) In other words a nuisance may result from conduct which is intentional or negligent or conduct which falls within the principle of strict liability without fault. The point is that nuisance is a result and negligence is a cause and they cannot be distinguished otherwise." 211 Kan. at 364.

Prosser's analysis, approved in *Culwell,* identifies the three sources of tort liability encompassed by the term nuisance:

"Today liability for nuisance may rest upon (1) an intentional invasion of the plaintiff's interests, or (2) a negligent one, or (3) conduct which is abnormal and out of place in its surroundings, and so falls fairly within the principle of strict liability. With very rare exceptions, there is no liability unless the case can be fitted into one of these familiar categories." (Numerals inserted.) Prosser, Law of Torts § 87, p. 574 (4th Ed. 1971).

In this case, we are not concerned with the third type of nuisance—an abnormally dangerous activity invoking the doctrine of strict liability. The nuisance complained of in this case flows from either "intentional" or "negligent" conduct. Prosser expounds on those two concepts:

"Any of the three types of conduct may result in liability for a private nuisance. By far the greater number of such nuisances are intentional. Occasionally they proceed from a malicious desire to do harm for its own sake; but more often they are intentional merely in the sense that the defendant has *created or continued the condition causing the nuisance with full knowledge that the harm to the plaintiff's interests is substantially certain to follow.* Thus a defendant who continues to spray chemicals into the air after he is notified that they are blown onto the plaintiff's land is to be regarded as intending that result, and the same is true when he knows that he is contaminating the plaintiff's water supply with his slag refuse,

or that blown sand from the land he is improving is ruining the paint on the plaintiff's house. If there is no reasonable justification for such conduct, it is tortious and subjects him to liability.

"But a nuisance may *also result from conduct which is merely negligent,* where there is no intent to interfere in any way with the plaintiff, but merely a failure to take precautions against a risk apparent to a reasonable man. The defendant may, for example, carry on some entirely proper activity, such as burying dead animals, firing his furnace, or constructing a water main in the street, without reasonable care against the stench or smoke or flow of water which may follow. In particular, negligence is the usual basis of liability where the defendant is doing something authorized by the legislature, or, without knowledge that anything is wrong, he has merely failed to inspect and repair his premises, or he has only failed to discover or to repair or abate a condition which he has not created, but which is under his control." (Emphasis added.) Prosser, Law of Torts § 87, pp. 574-75 (4th ed. 1971).

Looking first at what might be termed "negligent nuisance," we find the majority rule stated in 58 Am. Jur. 2d, Nuisances § 221, p. 825. After surveying the cases, the authors conclude:

"Most courts hold that where a nuisance has its origin in negligence, as distinguished from an absolute nuisance, contributory negligence is a defense . . . ."

See also *Copart Inds. v. Con. Ed.,* 41 N.Y.2d 564, 394 N.Y.S.2d 169, 362 N.E.2d 968 (1977); *City of Houston v. Henderson,* 506 S.W.2d 731 (Tex. Civ. App. 1974); *Rothfuss v. Hamilton Masonic Temple Co.,* 34 Ohio St. 2d 176, 297 N.E.2d 105 (1973); *Kostyal v. Cass,* 163 Conn. 92, 302 A.2d 121 (1972); 66 C.J.S., Nuisances § 11 b. See generally Seavey, *Nuisance: Contributory Negligence and Other Mysteries,* 65 Harv. L. Rev. 984 (1952).

Under the scheme of comparative negligence adopted in Kansas, contributory negligence, once a complete defense, is now subjected to comparative fault principles. *Brown v. Keill,* 224 Kan. 195, 580 P.2d 867 (1978). As noted in *Arredondo v. Duckwall Stores, Inc.,* 227 Kan. 842, 610 P.2d 1107 (1980), in any situation where contributory negligence would have been a defense in the absence of the statute, comparative negligence now applies. 227 Kan. at 845. See also *Kennedy v. City of Sawyer,* 228 Kan. 439, 618 P.2d 788 (1980), and cases discussed at p. 452. Thus, to the extent the city's nuisance arose from its negligence, the plaintiff's conduct which contributed to its injuries should be compared to the city's lack of care.

That is the result reached elsewhere in negligent nuisance cases under comparative negligence. *Nelson v. Hansen,* 10 Wis. 2d 107,

102 N.W.2d 251 (1960); *Schiro v. Oriental Realty Co.*, 272 Wis. 537, 76 N.W.2d 355 (1956), *appeal after remand* 7 Wis. 2d 556, 97 N.W.2d 385 (1959); *Floyd v. City of Albany*, 105 Ga. App. 31, 123 S.E.2d 446 (1961).

Judge Woods in commentary confirms this result:

"In those jurisdictions that recognize negligence as a basis for some forms of nuisance, comparative negligence will doubtlessly apply to diminish the plaintiff's claim in a proper case." Woods, Comparative Fault § 11.3, p. 206 (1978).

See also Schwartz, Comparative Negligence § 11.3, pp. 190-91 (1974).

We therefore hold that it was proper for the trial court to instruct the jury to compare the relative causal responsibility for plaintiff's damages, at least to the extent they arose from the city's negligence in the creation of the nuisance.

A more difficult question arises if the city's dump may be classified as an "intentional" nuisance rather than merely the result of the city's lack of care. Under the authorities cited above, contributory negligence is no defense to an intentional nuisance. See also 58 Am. Jur. 2d, Nuisances § 11; *Timmons v. Reed*, 569 P.2d 112 (Wyo. 1977); *Furrer v. Talent Irrigation District*, 258 Or. 494, 466 P.2d 605 (1970); *Denny v. Garavaglia*, 333 Mich. 317, 52 N.W.2d 521 (1952); Restatement (Second) of Torts § 840B, pp. 170-71; 58 Am. Jur. 2d, Nuisances § 221. The matter is complicated by the tendency of courts to lump under the generic term "absolute" nuisance both truly "intentional" nuisances and those where the defendant's culpability falls short of being "intentional." We must then determine whether the city's conduct here deserves the "intentional" label.

We begin with the position taken by the Restatement (Second) of Torts § 825, p. 117:

"An invasion of another's interest in the use and enjoyment of land or an interference with the public right, is intentional if the actor

(a) acts for the purpose of causing it, or

(b) *knows* that it is resulting or is *substantially certain* to result from his conduct." (Emphasis added.)

Comment: *c*, p. 118, elaborates on the definition:

"*c. Meaning of 'intentional invasion.'* To be 'intentional,' an invasion of another's interest in the use and enjoyment of land, or of the public right, need not be inspired by malice or ill will on the actor's part toward the other. An invasion so inspired is intentional, but so is an invasion that the actor knowingly causes in

the pursuit of a laudable enterprise without any desire to cause harm. It is the knowledge that the actor has at the time he acts or fails to act that determines whether the invasion resulting from his conduct is intentional or unintentional. *It is not enough to make an invasion intentional that the actor realizes or should realize that his conduct involves a serious risk or likelihood of causing the invasion. He must either act for the purpose of causing it or know that it is resulting or.is substantially certain to result from his conduct."* (Emphasis added.)

Dean Prosser, in discussing "absolute" nuisances where the defendant's intent is only to create a condition carrying *risk* of harm, and not substantial *certainty* of harm, observes:

"There have been courts, such as Connecticut, New York, and formerly New Jersey, which have held that since the *nuisance itself* is an intentional, or "absolute" one, contributory negligence cannot be a defense to the plaintiff's action founded on it. In the better reasoned cases, this has been rejected, and it has been recognized that so far as the tort liability is concerned, *the defendant has created only a risk, and that with respect to the resulting damage his conduct cannot be called anything more than negligence;* and hence that contributory negligence is a valid defense. It may be surmised that the decisions barring the defense have rested in reality upon a dislike of it; but the way to get rid of it is scarcely by resort to fictions transforming negligence into intent." (Emphasis added.) Prosser, Law of Torts § 91, pp. 609-10 (4th ed. 1971).

As we read our own cases, summarized in *Kennedy v. City of Sawyer,* where tort liability is predicated on conduct less culpable than "intentional" the general rule is to compare fault and causation. Under the accepted analyses of nuisance, to create an "intentional" nuisance it is not enough to intend to create a *condition* causing harm; the defendant must either specifically intend to damage the plaintiff or act in such a way as to make it "substantially certain" that damage will follow. In the case of a true intentional nuisance, where contributory negligence was never a defense, it may well be argued that under comparative negligence fault should not be compared. That is not what we have here, however.

This case involves a specific incident stemming from a condition apparently existing for a number of years prior to the injury. There had been some isolated instances of trouble in prior years—even, as will be discussed later, to the point of provoking a lawsuit. However, there was apparently nothing of the magnitude of this incident, and no evidence was introduced of any troubles before 1975. The jury heard only of heavy rains earlier in 1975 which had caused plaintiff concern, but no serious difficulties. Although the city may have known of plaintiff's continuing

concern, it was not until plaintiff's drainage system clogged and ruptured, presumably as a result of the combination of trash and debris washing down the ravine and the improper design of the system itself, that serious damage occurred. The fact the city contributed by its dumping is not sufficient to charge it with intentional wrongdoing. Along with other unnamed parties, the city simply dumped where it should not have. There is nothing to indicate it *intended* to damage the plaintiff, or that the injury was substantially *certain* to occur. At best, the evidence showed only that the city's conduct created a *condition* posing an undue *risk* of harm. Accordingly, it was proper for the jury as fact finder to allocate causal responsibility for plaintiff's damages.

### III.  THE PROTECTIVE ORDER

Prior to trial the defendant city filed, and with plaintiff's consent the court sustained, a motion in limine preventing the introduction of evidence relating to events occurring before January 1, 1975. The purpose was to avoid mention of a previous lawsuit between the parties involving debris washing onto plaintiff's land on three different occasions in 1973 and 1974. The suit had been settled and plaintiff in August, 1975, had executed a covenant not to sue covering events prior to January 1, 1975. The city contends the order was violated to its prejudice. We find no reversible error.

The background of the city's contention, highly summarized, is as follows: The city's position at trial was that it had no notice of plaintiff's continuing problems with the city's "dump." Plaintiff's president testified to a meeting with city officials on April 4, 1975. That was a time not covered by the protective order, but the meeting apparently dealt with settlement of the prior suit. That fact was not brought out by plaintiff, but the fact of the meeting was relied on to show notice of plaintiff's complaints. During the city's case the mayor in effect denied receiving notice at the April 4 meeting. On cross-examination, he was asked if he had notice of plaintiff's complaints any time in 1975. His response was that he knew plaintiff had filed a lawsuit.

There are three reasons why the city cannot secure a reversal based on these trial occurrences. First, when the April 4 meeting first came up, the court asked counsel for the city if he wished to move for a mistrial; counsel declined. A party may not adopt "wait and see" tactics and complain only if the result is unfavor-

able. *State v. Buggs,* 219 Kan. 203, 207-08, 547 P.2d 720 (1976); *Tilley v. International Harvester Co.,* 208 Kan. 75, 82, 490 P.2d 392 (1971).

Second, the only clear reference to the prior suit came from the city's witness in an unresponsive answer to a proper question by plaintiff's counsel. From plaintiff's standpoint the reference to the forbidden subject was at best "inadvertent." See *Borth v. Borth,* 221 Kan. 494, Syl. ¶ 2, 561 P.2d 408 (1977) (inadvertent reference to insurance). In addition, the city cannot be permitted to take advantage of the "misconduct" of its own witness.

Third, the question of violation of the protective order was presented to the trial court in the city's post-trial motion and found to be without merit.

"Ruling on whether a pretrial exclusionary order entered pursuant to a motion *in limine* has been violated is a matter for the sound discretion of the district court. The district court's determination will not be disturbed on appeal absent a clear showing of abuse of discretion." *Ayers v. Christiansen,* 222 Kan. 225, Syl. ¶ 1, 564 P.2d 458 (1977).

We find no abuse of discretion here.
Affirmed.