Otto C. GRAFFUNDER, et al., Appellants,

v.

The CITY OF MAHTOMEDI, Respondent.

No. C7–85–922.

Court of Appeals of Minnesota.

Nov. 5, 1985.

James H. Williams, St. Paul, for appellants.

Richard D. Allen, Charles B. Rogers, Briggs & Morgan, Minneapolis, for respondent.

Heard, considered and decided by FORSBERG, P.J., and PARKER and FOLEY, JJ.

## OPINION

FORSBERG, Judge.

This appeal is from a judgment entered against a landowner on a claim of negligence, nuisance, and trespass against the respondent City of Mahtomedi following alleged recurrent backups of sewage into his basement. Trial was to the court, which determined that appellant was 70% negligent and the City 30% negligent. The court found damages of $2320. We reverse and remand the apportionment of negligence, and affirm the finding on damages.

## FACTS

Appellant Otto Graffunder is the fee owner of residential property located on the east shore of White Bear Lake, in the City of Mahtomedi.

The City in 1963 or 1964 constructed a sanitary sewer system to replace private septic systems. Graffunder was required to connect to the system and hired a contractor who installed a house service line to the main sewer line. He began to have problems with sewage backup in his basement soon after he connected. It was not until 1971, however, that he began to keep records of each backup incident and make complaints to the City.

Graffunder filed suit against the City in June of 1974. He sold the property to his son on a contract for deed in 1979. His son settled with the City prior to trial.

The City in August of 1974 ordered a survey of the Park Avenue sewer system, the main line servicing Graffunder's property. The consultant concluded that the main sewer line was at an adequate depth to provide service to Graffunder, assuming that his house line was properly constructed.

Graffunder contends, and his reports of backups show, that the backups occurred following power outages affecting the lift station "downstream" from his house, or following lift station failure due to other reasons. Other witnesses corroborated instances of backup following outages. The superintendent of public utilities testified that Graffunder reported a backup at times when there was no problem with the lift station pumps. The City contends that backups were caused, at least occasionally, by problems with Graffunder's own service line. It concedes that there were backups caused by power outages to lift station no. 5.

The lift station has two independent compressed air pumps which force the sewage to a higher elevation main. Each provides backup if the other malfunctions; however, there is no auxiliary power in the event of a power outage. The City relies on two

portable generators which it can transport to the site. There are nine lift stations maintained by the City. The lift station has a light aboveground which goes on when the lift station pumps are not operating. It is 660 feet from Graffunder's residence.

The City responded to Graffunder's problem by advising him, in 1972, that he should install a "back-check valve" in his service line. This is a valve that obstructs flow from the wrong direction and prevents backup. Graffunder did not install one because, he testified, he was told by plumbers he consulted that it would not solve the problem.

Wayne Plourde, a master plumber consulted in 1977, recommended against installing a back-check valve because there was insufficient elevation, there would be problems rodding out the line to remove obstructions without damaging the valve, and the valve should be in an accessible spot. He estimated the cost at $700–800. He testified that the valve was "the best he could do under the situation" but "the last resort."

The City did not offer to pay Graffunder for the back-check valve installation. It later settled with his son, the current occupant, by paying $1000 for installation of a back-check valve and warning system, in exchange for dismissal of all claims.

The trial court concluded as follows: That Plaintiff bears [70%] comparative fault for failing to install a backup check valve and failing to determine that the service line to the street was properly aligned and without obstruction * * * *.

It found that the City was negligent in failing "to keep its lift stations in repair and in operation." The court made no separate conclusions as to the nuisance claim, treating it within the allocation of comparative fault.

## ISSUES

1. Did the evidence support the trial court's apportionment of negligence?

2. Did the trial court err in the assessment of damages?

## ANALYSIS

### I.

■ The court's finding that the City was causally negligent was amply supported by the evidence. The City's failure to provide either adequate reserve power or timely response to lift station failure caused backups nearly every year, with followup problems sometimes lasting several days. *See generally Lawin v. City of Long Prairie*, 355 N.W.2d 764, 766–67 (Minn.Ct.App.1984) *pet. for rev. denied* (Minn. Feb. 5, 1985) (evidence of city's failure to upgrade sewer despite increased usage, plus lack of preventive devices or regular maintenance, was sufficient evidence of negligence to go to the jury); *cf., Town of West Point v. Evans*, 224 Va. 625, 299 S.E.2d 349, 351 (1983) (homeowner presented only circumstantial evidence not eliminating other possible causes of sewage backup).

The trial court's finding that Graffunder was more at fault than the City was based on speculative testimony of possible misalignment of, or obstructions in, Graffunder's own service line, and on a determination that Graffunder was responsible for correcting his problem by installing a back-check valve.

■ The only evidence of a problem in Graffunder's line was a city employee's testimony that there was a backup at times when no problem existed in the main line, and an expert's opinion based on the number of calls made to Roto-Rooter. This was not substantial evidence which would reasonably support the trial court's finding of negligence. *Estate of Serbus v. Serbus*, 324 N.W.2d 381, 385 (Minn.1982) (trial court's finding is clearly erroneous if not reasonably supported by the evidence).

■ Nor was Graffunder negligent in failing to install a back-check valve to remedy a problem caused by failures of the City's lift station. A duty to undertake such a remedial measure arises only in

respect to mitigation of damages. *See, e.g., Larson v. Urban Unit Corporation,* 360 N.W.2d 451, 452 (Minn.Ct.App.1985) (homeowners mitigated damages due to basement water problem by grading land to slope away from house).

A party has a duty to act reasonably in avoiding the consequences of the tortfeasor's act. *Eg., Adee v. Evanson,* 281 N.W.2d 177, 180 (Minn.1979) (duty to obtain treatment for injuries). The failure to take reasonable steps to mitigate damages is "fault" which may be apportioned under the Comparative Fault Act. *Lesmeister v. Dilly,* 330 N.W.2d 95, 103 (Minn. 1983). Graffunder's failure to install a back-check valve, however, was not unreasonable with respect to the damages recognized by the trial court.

The trial court approved damages in the amount of $2320 for costs of cleanup in the Graffunder home, and denied damages of approximately $40,000 claimed for the loss of value of the home. We believe it was not unreasonable for Graffunder to refuse to pay an estimated cost of $700 or $800 for installation of a back-check valve, which was not certain to remedy the problem, simply to avoid the costs of cleanup. Graffunder, who had brought this action in 1974, did not attempt to sell the house until 1976 or 1977, when he claims he discovered the $40,000 diminution in value. A failure to mitigate that claimed loss does not affect his right to a full recovery for the earlier, lesser injury. *See Christopherson v. Independent School District No. 284,* 354 N.W.2d 845, 848 (Minn.Ct.App.1984) (failure to avoid 1984 re-injury would not prevent recovery for 1978 injury).

Since we reverse the trial court's apportionment of negligence, we need not address appellant's claim that a nuisance should have been found regardless of negligence.

## II.

The trial court found that Graffunder presented insufficient evidence of a reduction in the value of the house. There was no evidence that the house was listed or offered at a price significantly higher than the $70,000 for which it was sold to Graffunder's son. Although Graffunder presented a 1984 appraisal of the house which may have supported a $40,000 reduction, the trial court's denial of any award for a reduction in value was within its discretion. *See Arons v. Allstate Insurance Company,* 363 N.W.2d 832, 833 (Minn.Ct.App.1985) (determining whether damages are speculative is a function of the trial court). In addition, as indicated above, the trial court could have found that Graffunder's failure to install a back-check valve in 1977, even though not a certain solution to the problem, was unreasonable in relation to the claimed reduction in value of the house.

## DECISION

The trial court erred in apportioning negligence to appellant. The trial court's finding on damages was supported by the evidence. We reverse and remand for appropriate findings and an order directing the entry of judgment for appellant for the damages as found by the trial court.

Affirmed in part, reversed in part and remanded.