No. 72,885

UNITED PROTEINS, INC., *Appellant/Cross-Appellee,* v. FARMLAND
INDUSTRIES, INC., *Appellee/Cross-Appellant.*
(915 P.2d 80)

 Opinion filed
April 19, 1996. 

*Garry R. Appel*, of Doherty, Rumble & Butler, P.C., of Denver, Colorado, argued the cause, and *Terry J. Torline*, of Martin, Pringle, Oliver, Wallace, & Swartz, L.C., of Wichita, was with him on the brief for appellant/cross-appellee.

*Christopher M. McDonald*, of Shook, Hardy & Bacon, of Kansas City, Missouri, argued the cause, and *Gary L. Whittier*, of the same firm, was with him on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

LARSON, J.: This case arises from the contamination of the Ogallala aquifer under plaintiff United Proteins, Inc.'s (UPI) pet food plant by hexavalent chromium released by defendant Farmland Industries, Inc. (Farmland). UPI sought damages for holding costs it allegedly incurred due to its inability to sell the plant on theories of trespass and intentional private nuisance after its strict liability and negligence theories were dismissed as barred by the statute of repose. The trial court found Farmland liable but awarded only nominal damages. Both parties appeal. Although there is merit to UPI's contention that the trial court improperly computed damages, we agree with Farmland's arguments that UPI has failed to prove essential elements under both trespass or intentional private nuisance. Farmland is entitled to judgment as a matter of law.

*Facts*

UPI owns an 85-acre tract with a 10-acre pet food plant development outside of Dodge City, Kansas. UPI initially acquired an interest in the Dodge City property in August 1989. It acquired full ownership of the plant upon exercising a purchase option by paying off industrial revenue bonds in 1993.

Farmland owns and operates a fertilizer plant adjacent to UPI's property in which it used hexavalent chromium as a corrosion inhibitor in the cooling water system prior to June 1982. At some point while that system was in operation, approximately 1,200 gallons of hexavalent chromium was released, contaminating the Ogallala aquifer under Farmland's property. This hazardous substance leached into the groundwater under UPI's property in concentrations in excess of regulatory limits. UPI knew of this contamination at the time it acquired the property.

In June 1982, Farmland notified the Kansas Department of Health and Environment of the contamination and began a remediation program by drilling approximately 91 monitoring and recovery wells on and around Farmland's property, including 15 wells on UPI's property. The remediation program consists of recovery of the water in the aquifer through the above-described wells and then treating the water and returning it to the aquifer. This "pump and treat" program will eventually reduce the chromium contamination to within regulatory limits.

UPI has plugged its wells to the Ogallala aquifer and now draws water from the deeper Dakota aquifer. Although this reduced the amount of available water and the efficiency of the pet food plant, UPI discontinued pet food operations for reasons totally unrelated to the contamination of the aquifer and began efforts to sell the plant in early 1991. It had been unable to do so at the time of trial in August 1994, although it sold similar facilities in other parts of the country with no contamination in 3 to 15 months.

On August 27, 1993, UPI commenced the present action. UPI initially asserted claims under the theories of intentional nuisance, strict liability, intentional trespass, and negligence. In June 1994, upon Farmland's motion for summary judgment, the trial court dismissed the strict liability and negligence claims as barred by the statute of repose. The trial court refused Farmland's request for judgment on the remaining nuisance and trespass claims but limited recovery to that available because of the defendant's activity within the limitations period under those two theories. UPI contended it suffered $373,500 in damages because it was unable to sell the plant.

In a trial to the court only UPI presented evidence. UPI's real estate appraisal expert opined that a property like the UPI Dodge City plant would ordinarily be expected to sell within 1 year but had not sold in this instance because it was contaminated. The trial court ruled that Farmland was liable under the theories argued by UPI, but that the exclusive measure of damages was the decreased rental market value of the UPI plant. The court found UPI presented insufficient evidence of such damages and awarded nominal damages of $1.

UPI appeals the trial court's determination that only damages measured by the reduced rental value of the property could be recovered. Farmland cross-appeals the determination that it was liable under either a trespass or intentional nuisance theory.

Because we reverse the trial court's ruling that Farmland was liable under either the trespass or the nuisance theory and rule that judgment is to be entered in favor of Farmland and against UPI, we need not consider UPI's appeal and will limit ourselves only to the contentions of Farmland's cross-appeal.

*Did the trial court apply the wrong legal standard to determine Farmland had the intent to trespass?*

It is essential to first realize and understand that while this might have been a relatively simple case of negligence or strict liability, neither of those theories were available because of UPI's delay in filing. With those two potentially winning theories lost by UPI's untimeliness, UPI was left in the unenviable position of pursuing theories which alleged Farmland had engaged in some tortious conduct within the limitations period. Continuing trespass was one such possible theory. Although the original trespass was outside the limitations period, if UPI could prove that Farmland permitted the contamination to remain on UPI's property within the limitations period and that the original intrusion was tortious, there might be culpable conduct on which recovery could be based. See Restatement (Second) of Torts § 161 (1963); Prosser and Keeton, Law of Torts § 13, p. 83 (5th ed. 1984).

On the trespass claim, Farmland argues the trial court used a legally improper standard to determine whether its conduct was

intentional. The trial court held as a conclusion of law: "In the case of continuing trespass, the intent requirement may be satisfied by knowledge, either actual or inferred, that the substance was reaching the land of another." As we will hereafter show, this is not the complete test under Kansas law.

"The concept of trespass should be used, if at all, only where defendant intends to have the foreign matter intrude upon the land, or where defendant's 'act is done with knowledge that it will to a substantial certainty result in the entry of foreign matter.' " 1 Harper, James, & Gray, The Law of Torts § 1.7, p. 1:30 (3d ed. 1996). Liability for a continuing trespass is premised on the original intrusion being trespassory. Harper, James, & Gray, § 1:7, p. 1:30. Thus, if the original intrusion is not trespassory, mere knowledge that a substance reached the land of another is insufficient to establish a continuing trespass.

Consequently, the question becomes whether Farmland's mere knowledge that the substance reached UPI's land would satisfy UPI's burden to prove the original intrusion was intentional. UPI pled trespass as an intentional tort and asserted neither that Farmland was negligent nor that Farmland was engaged in an abnormally dangerous activity. We therefore start with the proposition provided by Restatement (Second) of Torts § 166 (1963): "Except where the actor is engaged in an abnormally dangerous activity, an unintentional and non-negligent . . . causing a thing . . . to enter the land, does not subject the actor to liability to the possessor, even though the entry causes harm." Consistent with this rule, Kansas has recognized intent is an element of a claim for non-negligent intrusion upon the land of another. *Riddle Quarries, Inc. v. Thompson*, 177 Kan. 307, 311, 279 P.2d 266 (1955); 75 Am. Jur. 2d, Trespass § 25 ("A trespass to real property is characterized as an intentional tort."). Although in its historical development through the common law at certain times trespass has encompassed unintentional and non-negligent acts, Kansas follows the modern and near universal view that it is an intentional tort. See Prosser and Keeton, Law of Torts § 13, pp. 67-68 (5th ed. 1984).

Restatement (Second) of Torts § 164, Comment a (1963), explains the nature of the intent required: "In order to be liable for

trespass [for an intentional intrusion] it is necessary only that the actor intentionally be upon any part of the land in question." Am. Jur. 2d, Trespass § 29, relying on Restatement (Second) of Torts § 163, Comments b & c (1963), summarizes the intent required for actionable intentional trespass:

"[T]he intention required to make the actor liable for trespass is an intention to enter upon the particular piece of land in question, irrespective of whether the actor knows or should know that he is not entitled to enter. In order [that] an actor may intentionally enter a particular piece of land, it is not necessary that he act for the purpose of entering; it is enough that he knows that his conduct will result in such an entry, inevitably or to a substantial certainty. Further, the doing of an act which will almost certainly result in the entry of foreign matter upon another's land, such as the operation of a cement plant which continuously deposits dust and other substances onto a neighboring property, suffices for an intentional trespass to land, regardless of the lack of an intent to harm."

Thus, as with other intentional torts, UPI had to show either the misconduct, in this case entry, was purposeful, or that it was substantially certain to occur. In addition, it must also have been shown that Farmland intended the act which constituted the invasion of UPI's rights. See *Snow v. City of Columbia*, 305 S.C. 544, 554, 409 S.E.2d 797 (1991) (where discharge of water was a result of accidental, involuntary act, no basis for a trespass claim existed.) The legal standard employed by the trial court fails to reflect the full scope of Farmland's intent, which UPI was required to prove.

UPI's reliance on *Atkinson v. Herington Cattle Co., Inc.*, 200 Kan. 298, 436 P.2d 816 (1968), for the proposition that no intent to invade the property of another is required in a trespass case, is misplaced. *Atkinson* is a strict liability case following the doctrine of *Rylands v. Fletcher*, L.R. 3 H.L. 330 (1868). See *Williams v. Amoco Production Co.*, 241 Kan. 102, 113, 734 P.2d 1113 (1987) (classifying *Atkinson* in long line of *Rylands* strict liability cases). In this case, as mentioned above, UPI's strict liability claim was dismissed because of the statute of repose.

Our case is similar to *Moulton v. Groveton Papers Co.*, 112 N.H. 50, 54, 289 A.2d 68 (1972), in which the court rejected a claim that where the failure of defendant's dam damaged the plaintiff's land, an action for trespass could be supported through the plaintiff's

"constructive intent." The court found this was an impermissible attempt to impose absolute liability.

Testimony before the trial court provided absolutely no basis to conclude the discharge of hexavalent chromium was either purposeful or substantially certain to occur. UPI presented no evidence whatsoever as to the cause or circumstances of the discharge. Thus, UPI failed to meet its burden of proof.

In sum, the trial court applied the wrong legal standard to determine whether UPI met its burden of proof on the element of intent on the trespass claim. Even if the correct legal standard had been applied, UPI could not have prevailed. Therefore, we are compelled to reverse the judgment of the trial court on UPI's trespass theory, and this case need not be remanded to the trial court for any further determinations on this issue.

*Does the record support a presumption that the trial court found the nuisance created by Farmland was intentional?*

On the nuisance claim, Farmland argues the trial court found it liable without making any specific finding that the nuisance was intentional. Farmland suggests this presents a question of law for our review, considering whether liability can be imposed without a finding that the conduct was intentional. See *Horsch v. Terminix Int'l. Co.*, 19 Kan. App. 2d 134, 865 P.2d 1044 (1993), *rev. denied* 254 Kan. 1007 (1994).

UPI argues that Farmland misstates our standard of review. Although the trial court should state the controlling facts in its decision (Supreme Court Rule 165 [1995 Kan. Ct. R. Annot. 171]), where the court fails to do so and the litigants fail to object, the trial court is presumed to have found all facts necessary to support the judgment, and omissions in findings will not be considered on appeal. *Galindo v. City of Coffeyville*, 256 Kan. 455, 467, 885 P.2d 1246 (1994). Thus, UPI argues the appropriate standard of review is whether there is substantial competent evidence to support the trial court's implied factual finding as to the nuisance claim. See *Southwest Nat'l Bank of Wichita v. ATG Constr. Mgt., Inc.*, 241 Kan. 257, 264, 736 P.2d 894 (1987).

In its reply brief, Farmland clarifies that it does not take issue with any of the trial court's factual findings but only with the legal conclusion that intent may be established by "knowledge, either actual or inferred, that the substance was reaching the land of another." The trial court used this reasoning only as to the trespass claim. Consequently, our scope of review over the nuisance claim is to determine whether substantial competent evidence establishes intent.

We note that the trial court found: "Having contaminated the aquifer with a hazardous substance, Farmland is unquestionably obligated to make good any temporary losses incurred by UPI as a result." This could be read to imply that the trial court relied on a strict liability theory rather than the intentional nuisance theory pled by UPI. The parties have not interpreted this statement in this way and we choose not to either.

Remember again that because its claim was dismissed on summary judgment prior to trial, UPI could not rely on a theory of strict liability for an abnormally dangerous activity. This is *not* a *Rylands v. Fletcher* case. Nor did the trial court consider the elements of such a claim or the factors for determining whether an activity is abnormally dangerous as set out in the Restatement (Second) of Torts §§ 519 and 520 (1976), adopted by this court in *Williams v. Amoco Production Co.*, 241 Kan. 102, 115, 734 P.2d 1113 (1987). Not only was the strict liability theory dismissed by the time of trial and the elements of it not considered by the trial court, but also the evidence produced at trial did not support it. Similarly, there were no allegations of and no proof regarding any negligence by Farmland, as the negligence claim had also already been dismissed at the time of trial.

Although a nuisance action can also be based on strict liability or negligence, UPI explicitly set out in its petition that it sought relief on a theory of intentional nuisance. See *Culwell v. Abbott Construction Co.*, 211 Kan. 359, 364, 506 P.2d 1191 (1973). Under the rule synthesized in the Restatement (Second) of Torts § 825(a) and 825(b) (1965), intentional nuisance requires that the actor act with the purpose of causing the nuisance, or know that it is resulting or substantially certain to result from his or her conduct. Com-

ment c to Restatement (Second) of Torts § 825 provides: "It is not enough to make an invasion intentional that the actor realizes or should realize that his conduct involves a serious risk or likelihood of causing an invasion. He must either act for the purpose of causing it or know that it is resulting or is substantially certain to result from his conduct."

*Sandifer Motors, Inc. v. City of Roeland Park*, 6 Kan. App. 2d 308, Syl. ¶ 11, 628 P.2d 239, *rev. denied* 230 Kan. 819 (1981), states the nature of the intent required in Kansas: "To create an 'intentional' nuisance, it is not enough to intend to create a condition causing harm; the defendant must either specifically intend to damage the plaintiff or act in such a way as to make it 'substantially certain' that damage will follow."

*Williams v. Amoco Production Co.*, 241 Kan. 102, controls this issue. In *Williams*, the plaintiff argued the trial court should have given an instruction on private nuisance. Plaintiff's action claimed damages for natural gas leaking from the defendant's wells into the aquifer and contaminating irrigation water. This court noted that the intent to interfere with the use and enjoyment of the land by one entitled to that use is an element of such a private nuisance claim. It concluded:

"There is no evidence in this case that Amoco intended for natural gas to leak from its wells into the aquifer and eventually into appellees' irrigation water. Nor is there any evidence that Amoco intended this condition to continue once discovered. Accordingly, one of the elements necessary to recover on a nuisance theory was not established. We hold the trial court did not err in failing to instruct on nuisance." 241 Kan. at 118.

In this case, the pollution which migrated into the water table under UPI's property was the result of a release of chromium from Farmland's plant. There is no showing Farmland intended this leak into the aquifer and eventually under UPI's land. There is no showing Farmland intended this release to continue after it was clear that it had damaged the aquifer under the UPI's land. There was no showing the discharge was the result of any intentional act of Farmland. There was no showing of either purpose to cause an invasion or the substantial certainty of such invasion required to support an intentional private nuisance action. A review of the rec-

ord does not support the presumption that the trial court found all necessary facts. From the record, it is clear that a finding of intent, required by the law of intentional private nuisance, is not supported by substantial competent evidence. The trial court must be reversed.

In both the trespass and nuisance claims, UPI essentially attempts to expand the scope of strict liability beyond that outlined in the Restatement (Second) of Torts §§ 519 and 520 and adopted by this court. Having failed in its initial strict liability claim because of the statute of repose, UPI will not be permitted to create new causes of action for absolute continuing liability through traditionally intentional torts by eviscerating the element of intent.

: The trial court is reversed as to UPI's claims for recovery on both the theories of continuing trespass and intentional private nuisance. This moots UPI's appeal as to the issue of damages.

Reversed.