(996 P.2d 334)

No. 80,312

GARY L. LOFLAND and DEBRA S. LOFLAND, LIEUANA L. MAHANEY, CLAYTON THURMAN and JAN THURMAN, *Appellants*, v. SEDGWICK COUNTY, *Appellee*.

Opinion filed August 20, 1999.

*Derek S. Casey,* of Hutton & Hutton, of Wichita, for appellants.

*Eric B. Metz,* and *Rachael K. Pirner,* of Triplett, Woolf & Garretson, LLC, of Wichita, for appellee.

Before MARQUARDT, P.J., PIERRON, J., and GLENN D. SCHIFFNER, District Judge, assigned.

SCHIFFNER, J.: Gary L. Lofland, Debra S. Lofland, Lieuana L. Mahaney, Clayton Thurman, and Jan Thurman (Lofland group) appeal from the district court's order granting Sedgwick County's (County) motion for summary judgment on the Lofland group's claims of intentional trespass and nuisance, and from the court's application of the discretionary function exception to the Kansas Tort Claims Act (KTCA).

The Lofland group were homeowners in the Fairway Meadows development of Sedgwick County, Kansas, and suffered damages to their homes and personal property when the County's sewage system failed and caused raw sewage to back up into their homes.

In June 1995, the County received a power failure alarm from the Fairway Meadows pump station. County personnel arrived at the station within 10 minutes, but the alternate power source failed to operate. The pump was inoperative for 2 hours and the County's employees attempted to acquire a portable generator.

An employee of the County testified during his deposition it was known that if the pumps and backup system failed, sewage would back up into the homes serviced by the Fairway Meadows sewage system. The County did not warn the Lofland group of the threat of sewage backflow.

Although there was evidence that the value of two of the Lofland group's houses had actually increased subsequent to the 1995 occurrence, the Lofland group claim that those appraisals were made before it was discovered that the sewage system was designed to back up sewage into the houses in the event the pumps should fail.

The district court held that the Lofland group had failed to establish the elements necessary to prove intentional trespass or nuisance and granted the County's motion for summary judgment. The district court further ruled that any additional claims not disposed of in the County's summary judgment were barred by the discretionary function exception of the KTCA provided in K.S.A. 75-6104(e).

The Lofland group contend there were genuine issues of material fact as to whether the County possessed the requisite intent

to commit a trespass or create a nuisance; therefore, summary judgment was improper.

The standard of review of a district court's order granting summary judgment is well established. In considering a summary judgment motion, the trial court is required to resolve all facts and inferences which may be reasonably drawn from evidence in favor of the nonmoving party. Summary judgment is only proper when the pleadings, discovery responses, and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Hesler v. Osawatomie State Hospital*, 266 Kan. 616, 622, 971 P.2d 1169 (1999). Where reasonable minds could differ as to the conclusions which could be drawn from the evidence, summary judgment is not proper. *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131-32, 955 P.2d 1189 (1998).

When the issue before the court is a question of intent, the court should be cautious in granting a motion for summary judgment. *Cherryvale Grain Co. v. First State Bank of Edna*, 25 Kan. App. 2d 825, 831, 971 P.2d 1204 (1999). If, however, a defendant can establish there is no evidence to support an essential element of the plaintiff's claims, defendant is entitled to summary judgment. *Hesler*, 266 Kan. at 622.

The district court granted summary judgment on both claims and found that the Lofland group had failed to prove the County had the requisite intent to establish claims for intentional trespass or intentional nuisance. The elements of these claims were recently reviewed in *United Proteins, Inc. v. Farmland Industries, Inc.*, 259 Kan. 725, 915 P.2d 80 (1996), and both claims require proof of the same kind of intent.

A trespass can usually arise in three contexts. A trespass can be: (1) intentional; (2) the result of the defendant's negligence; or (3) based on strict liability when the defendant engages in an abnormally dangerous activity. See *United Proteins*, 259 Kan. at 729. Here, as in *United Proteins*, the Lofland group are not asserting claims of negligence or abnormally dangerous activities by the County. This leaves the Lofland group with a claim under the traditional intentional tort of trespass.

In *United Proteins*, the Supreme Court noted:

" 'The concept of trespass should be used, if at all, only where defendant intends to have the foreign matter intrude upon the land, or where defendant's "act is done with knowledge that *it will to a substantial certainty result in the entry of foreign matter.*" ' " 1 Harper, James & Gray, The Law of Torts § 1.7, p. 1:30 (3d ed. 1996).' " (Emphasis added.) 259 Kan. at 729.

In citing the Restatement (Second) of Torts, the Supreme Court noted:

" '[T]he intention required to make the actor liable for trespass is an intention to enter upon the particular piece of land in question, irrespective of whether the actor knows or should know that he is not entitled to enter. In order [that] an actor may intentionally enter a particular piece of land, it is not necessary that he act for the purpose of entering; it is enough that he knows that his conduct will result in such an entry, *inevitably or to a substantial certainty.*' " (Emphasis added.) 259 Kan. at 730.

Similarly, a nuisance claim can be based on intentional conduct, negligence, or strict liability for engaging in abnormally dangerous activities. An intentional nuisance "requires that the actor act with the purpose of causing the nuisance, or know that it is resulting or substantially certain to result from his or her conduct." *United Proteins*, 259 Kan. at 732. In other words, the defendant must specifically intend to damage the plaintiff or act in such a way to make it "substantially certain" damage will occur. *Sandifer Motors, Inc. v. City of Roeland Park*, 6 Kan. App. 2d 308, 318, 628 P.2d 239, *rev. denied* 230 Kan. 819 (1981); see also *Williams v. Amoco Production Co.*, 241 Kan. 102, 117-18, 734 P.2d 1113 (1987) (discussing the elements of a claim of private nuisance and the requirement of intent).

As in *United Proteins*, the Lofland group must establish that the County's entry on their property was purposeful or was substantially certain to occur in order to prove their claims of trespass and nuisance. 259 Kan. at 730. In this case, the Lofland group contend the County's sewer system was designed to back up into their basements and, thus, the County had the requisite intent for both the nuisance and trespass claims.

The Lofland group rely solely on the testimony of Mark Coronado, the utility maintenance crew chief for the County. In his

deposition, Coronado was asked what kept the wet well from over-flowing. Coronado's testimony was as follows:

"Q. Okay. If there was a large volume of liquid coming from the laterals and from the Station 5 feed into the wet well, what prevents the wet well from just over flowing? Did that question make sense?
"A. Yes, and at some point it would overflow but you need to consider the elevation. I mean GIS or the actual elevation in feet from sea level of the water and water seeks its own level all the way across the containment area. So for that to happen houses would have to float away because the wet well is a little bit higher than most of the property, the top of the wet well.
"Q. Top of the wet well, so some houses are going to get — if we started pump-ing liquid just into the wet well, water into the wet well, it should back up into some houses before it reached the top of the well?
"A. *Only if the pumps are not moving water.*" (Emphasis added.)

Since overflow could enter their homes if the pumps shut down, the Lofland group argue that when the County designed the sys-tem, it intended or knew with substantial certainty that sewage would end up in the Lofland group's homes.

The failing in the Lofland group's argument is that the sewer design allowed the backflow into their homes *only if the facility's pumps and backup systems failed.* The County designed the pump system to prevent backups by pumping excess flow out of the area and having backup generators available in case of a power failure. Unfortunately, it appears that in June 1995 both of these systems failed. Essentially, the Lofland group's argument appears to pro-pose that if the sewage system is not designed in a manner that backups could never occur, a municipality would be deemed to intend or know a substantial certainty of backups would occur and would always be liable for trespass and nuisance. Kansas cases sim-ply do not support this proposition.

For example, in *Sandifer Motors, Inc.*, 6 Kan. App. 2d 308, the plaintiff sued the City of Roeland Park after its business sustained flood damage. Plaintiff alleged the flooding occurred despite its own ground drainage system because the city permitted its adjoin-ing property to be used as a dump. Debris from the dump caused plaintiff's drainage system to clog and burst during a heavy rain. Defendant appealed after a jury was allowed to compare the fault of the parties in connection with plaintiff's nuisance claim. This

court ruled it was proper for the trial court to allow a comparison of fault unless the city's dump was an intentional nuisance rather than a negligent one. 6 Kan. App. 2d at 317. After noting the absence of prior serious problems from the dump, this court concluded that "[t]he fact the city contributed by its dumping is not sufficient to charge it with intentional wrongdoing. . . . There is nothing to indicate it *intended* to damage the plaintiff, or that the injury was substantially *certain* to occur." 6 Kan. App. 2d at 319.

Likewise, in *United Proteins*, 259 Kan. 725, the plaintiff sued Farmland Industries, the owner of an adjoining plant, for intentional trespass and nuisance after Farmland released chemicals which contaminated the plaintiff's underground aquifer. Claims for strict liability and negligence were dismissed as untimely. The Supreme Court found that defendant's knowledge of the chemical discharge, after the fact, was insufficient to establish the intent necessary for a claim of trespass or nuisance. The court noted there was no evidence the chemical discharge was intentional, that Farmland intended to cause an invasion, or that the invasion was a substantial certainty. 259 Kan. at 733.

The Supreme Court in *United Proteins* cited two out-of-state cases to support its rulings: *Snow v. City of Columbia*, 305 S.C. 544, 409 S.E.2d 797 (1991), and *Moulton v. Groveton Papers Co.*, 112 N.H. 50, 289 A.2d 68 (1972). These cases also show the scrutiny courts have demonstrated regarding requiring proof of clear intent and more than negligence in intentional trespass cases.

In *Snow*, homeowners brought suit against the city under theories of strict liability, negligence, and trespass for damage caused to their home when water discharged from a leaking water main. During the case, the city stipulated that water from its lines intruded on the homeowners' property. An expert witness for the plaintiffs testified that water built up pressure on the foundation of plaintiffs' house which caused a crack along a joint in the foundation that allowed water to leak into their basement. The court found, however, the evidence at best showed the city's discharge of water was not intentional but was due to the city's inadvertent failure to keep its water main in good operating condition. The court noted: "To hold otherwise on the facts before us would ef-

fectively impose strict liability under the guise of trespass to land." 305 S.C. at 554. The court did find, however, that a jury issue was presented on plaintiffs' negligence theory. 305 S.C. at 555-56.

In *Moulton*, the defendant owned and maintained a dam retaining water near its plant. The dam collapsed and discharged a large amount of water downstream on plaintiffs' properties. The New Hampshire Supreme Court upheld the dismissal of plaintiffs' claims based upon strict liability and intentional trespass. In discussing the latter, the court noted intentional trespass based on constructive intent was "merely another device to impose absolute liability on the defendants." 112 N.H. at 54. The court ruled absolute liability would be imposed in only a very few situations and the rule of absolute liability for trespass had been repudiated in most jurisdictions.

Likewise, the out-of-state cases cited in the Lofland group's brief do not support their claim that sufficient intent had been established. In *Dial v. City of O'Fallon*, 81 Ill. 2d 548, 411 N.E.2d 217 (1980), plaintiff sued the city after sewage backed up into the basement of her home. The backup occurred after the city closed an overflow outlet in its sewer system which was designed to prevent backups. A city employee testified the city knew that by closing the overflow, backups would likely occur. Plaintiff sued based on theories of negligence, strict liability, and trespass. In discussing the intent needed to prove intentional trespass, the Illinois court acknowledged plaintiff was required to prove the city acted with knowledge that the trespass would, *"to a substantial certainty,"* result. 81 Ill. 2d at 554. The court declined to decide whether the evidence was sufficient to support a finding of intentional trespass; however, the jury was only instructed as to negligent trespass and there were no objections to the instructions. 81 Ill. 2d at 556-57.

Since the district court did not reach the issue of whether the requisite intent was sufficiently proved, *Dial* provides no support for the Lofland group's arguments in this case. Moreover, *Dial* involved the city's act in intentionally shutting down the part of the system designed to prevent backups. Here, the County apparently designed the system in a manner to prevent backups, but those

systems failed during a storm. There was no intentional act by the County to shut down the pumps.

The Lofland group also rely on *Fletcher v. City of Independence*, 708 S.W.2d 158 (Mo. App. 1986). In *Fletcher*, the plaintiffs sued the city for damages caused from "recurrent" sewer backups into their home's basement. Plaintiffs were awarded damages and the city appealed, arguing an intentional nuisance had not been proven and comparative fault evidence should have been allowed. The plaintiffs presented evidence that backups had occurred over a period of 11 years and that they had reported the problem to a number of different municipal agencies and officials. The Missouri Court of Appeals found a claim of intentional nuisance could be · sustained based upon a "continuous, known invasion, where after complaint and notice of damage, the landowner continues to offend and refuses to correct or discontinue the misuse." 708 S.W.2d at 166; see also *Graffunder v. City of Mahtomedi*, 376 N.W.2d 282 (Minn. App. 1985) (recurrent backups possibly caused by power outages at lift station supports finding city was negligent in failing to provide adequate reserve power or timely response to the lift stations).

Similarly, *Blakeslee v. Punnett*, 368 N.Y.S.2d 216, 48 App. Div. 2d 641 (1975), involved a continuous trespass by neighboring properties which connected their sewer lines to plaintiff's line. After the nature of the buildings changed, plaintiff advised her neighbors they could no longer connect their lines to her sewer lines. Defendants, however, refused to disconnect their lines. After repeated backflows due to the overtaxed system, the court ordered defendants to connect to the city's sewer system.

Finally, the Lofland Group cite to *Carr v. City of Baton Rouge*, 314 So. 2d 527 (La. App. 1975). In *Carr*, plaintiff sued the city under theories of negligence and violation of a state statute creating liability if a landowner's work on his or her property damaged a neighbor's property. The suit arose after plaintiff complained her toilets were overflowing, and city maintenance workers used a high pressure hose in an attempt to dislodge an obstruction in a nearby sewer line. The sewer line was later discovered to be completely crushed, worsening the overflow of sewage into plaintiff's home.

The court upheld a verdict against the city by concluding the city's maintenance of the sewer line fell within the purview of the statute in question.

Because the case presently before the court only involves one incident rather than a continuous pattern of backups or ongoing use of the Lofland group's property, *Fletcher, Graffunder,* and *Blakeslee* provide no support for the Lofland group's claims. Likewise, *Carr* does not support Lofland group's claims because it was based on a unique statute under Louisiana's civil code, rather than on common-law concepts of intentional trespass or nuisance.

Based upon long-standing Kansas cases, the Lofland group failed to present the district court with sufficient evidence to establish that the County acted in any manner evidencing knowledge that a sewage backup would occur or that there was a substantial certainty such an event would occur. The Lofland group are simply challenging the design of the sewer pumps and arguing the requisite intent can be found because the County was aware overflows would occur *if the pumps failed and the backup generators did not work.* Essentially, the Lofland group argue that because the County knew the design of the pump station was not foolproof, the requisite intent existed. Such an argument requires the County to be the absolute insurer of its sewer system. This is not consistent with Kansas law of nuisance and intentional trespass, which limits liability to egregious circumstances.

When responding to the County's summary judgment motion, the Lofland group abandoned their claims based on negligence and noneconomic damages. The remaining claims before the district court were the claims based on nuisance and trespass theories. In its ruling, however, the district court concluded that any remaining claims asserted by the Lofland group were barred by the KTCA, and specifically the discretionary function exception provided in K.S.A. 75-6104(e).

On appeal, the Lofland group contend the immunity provision of the KTCA does not apply to their claims of nuisance and trespass. The Lofland group's claims of nuisance and trespass clearly fail on the merits, and no other claims have been identified or

argued on appeal. There is no need to further determine the applicability of the KTCA.

Affirmed.